1  LINDA ROSE FESSLER, ESQ. SBN 049417
   LAW OFFICE OF LINDA ROSE FESSLER
2  25108 Marguerite Pky #B222
   Mission Viejo CA 92692
3   (213) 617-8684; Fax (866) 492-1546
   Email: LindaFessler@LindaFessler.com
4
   Attorney for plaintiff
5  PAUL J. CROSKREY

6

7
                IN THE UNITED STATES DISTRICT COURT
8
            FOR THE CENTRAL DISTRICT OF CALIFORNIA
9
                      SOUTHERN DIVISION
10

11

12  PAUL J. CROSKREY,                   Case No. SACV 14-01318-DOC (RNBx)

13         plaintiff,                   Assigned to the Hon. David O. Carter

14         v.
                                        VERIFIED SECOND AMENDED
15  OCWEN LOAN SERVICING LLC, a         COMPLAINT FOR DAMAGES:
    Delaware limited liability company; 1.  SLANDER OF TITLE [Rest. 2d
16                                       Torts, §§623A, 324]
    HSBC BANK USA, N.A., as trustee for 2.  VIOLATION OF REAL ESTATE
17  the registered holders of NOMURA    SETTLEMENT PROCEDURES ACT
    HOME EQUITY LOAN, INC., ASSET-      (RESPA), [12 U.S.C. §2601]
18  BACKED CERTIFICATES, SERIES         3.  VIOLATION OF CALIFORNIA
    2006-HE3;                           BUSINESS & PROFESSIONS CODE
19                                       §17200 et seq.
    MORTGAGE ELECTRONIC                 4.  BREACH OF THE IMPLIED
20  REGISTRATION SYSTEMS, INC., a       COVENANT OF GOOD FAITH AND
    Delaware corporation;               FAIR DEALING
21                                       5.  QUIET TITLE [CODE CIV. PROC.
    WESTERN PROGRESSIVE, LLC, a         §§760.010-764.080]
22  Delaware limited liability company; 6.  DECLARATORY RELIEF

23         defendants.

24

25

26

27

28

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

I.    PRELIMINARY STATEMENT .......................................................................... 1

II.   STATEMENT OF THE CASE ............................................................................ 1

III.  JURISDICTION AND VENUE .......................................................................... 1

    A.   Complete Diversity of Citizenship ............................................................ 1

    B.   The Matter in Controversy is Satisfied ................................................... 3

IV.   BACKGROUND INFORMATION ..................................................................... 4

    A.   The Home-Ownership Mortgage Industry Suffered A Collapse That
        Left A Few Major Players Still Standing, Including The Defendants ....................... 4

    B.   The Defendants Have Been, And Are, Deeply Enmeshed In A Morass
        Of Questionable Loan Deals, Internal Reassignments Of
        Trusteeships, Note Ownership Transfers, And Foreclosures That Defy
        A Rational Sorting Out ............................................................................... 6

    C.   Over The Last Two Years, Defendant OCWEN Has Paid Nearly  $2.3
        Billion In Fines, Penalties, and Restitution. .......................................... 7

    D.   The Home Affordable Modification Plan (HAMP) ................................ 10

V.    COMMON FACTUAL ALLEGATIONS ........................................................ 12

VI.   CAUSES OF ACTION ...................................................................................... 20

    1.   COUNT I – SLANDER OF TITLE [Rest. 2d Torts, §§623A, 324] (ALL
        DEFENDANTS) ......................................................................................... 20

    2.   COUNT II – VIOLATION OF REAL ESTATE SETTLEMENT
        PROCEDURES ACT (12 USC §2601) (AS TO OCWEN) .......................... 23

    3.   COUNT III – VIOLATION OF CALIFORNIA BUSINESS AND
        PROFESSIONS CODE, §17200 et seq. (ALL DEFENDANTS) ................ 25

    4.   COUNT IV – BREACH OF COVENANT OF GOOD FAITH AND FAIR
        DEALING (ALL DEFENDANTS) ............................................................ 27

    5.   COUNT V – QUIET TITLE [CODE CIV. PROC. §§760.010-764.080] (AS
        TO OCWEN, HSBC & MERS) ................................................................ 28

    6.   COUNT VI – DECLARATORY RELIEF (ALL DEFENDANTS) .................... 29

VII.  PRAYER FOR RELIEF .................................................................................... 30

VERIFICATION .............................................................................................................. 33

EXHIBITS "A" - "M" ..................................................................................................... 34

PROOF OF SERVICE

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

1

## TABLE OF AUTHORITIES

**Cases**

*Bank of United States v. Devaux*, 9 U.S. (5 Cranch) 61, 87
(1809) (Marshall, C. J.)............................................................2

*Board of Governors Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2*........6

*Cabriales v. Nationstar Loan Servs.*, Case No. C 10-161 MEJ,
2010 WL 761081 (N.D.Cal. 2010) ........................................3

*CFPB 11/19/2013 Consent Order with OCWEN*............................8

*Chapman v. Deutsche Bank Nat. Trust Co.*, 651 F.3d 1039,
1045 fn.2 (9th Cir. 2011) ......................................................3

Cohn v. Petsmart, Inc., 281 F.3rd 837, 840 (9th Cir. 2002)...............3

*DEMPSEY v. OCWEN LOAN SERVICING, LLC*, US District Court
for Eastern Pennsylvania, 2:14-cv-02824-RBS ........................8

*FDIC-11-194b*.....................................................................6

*Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 9 (9th Cir.
1973) ................................................................................3

*Hertz Corporation v. Friend*, 130 S.Ct. 1181, 1 199 (2010)..............3

*Hunt v. Washington State Apple Advertising Com'n*, U.S. 333,
347 (1977) ........................................................................3

*New York State Department of Financial Services* consent order
with OCWEN Financial Services dated December 22, 2014.............9

*Reyes v. Wells Fargo Bank, N.A.*, Case No. C-10-01667 JCS ,
2010 WL 2629785 (N.D.Cal. 2010) ......................................3

*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings,
LLC*, 205 Cal. App. 4th 999, 1030 (2012)........................20, 21

*Vega v. First Federal Sav. & Loan Assoc.*, 622 F.2d 918, 925,
n. 8 (6th Cir. 1980) ..........................................................24

*Wigod v. Wells Fargo Bank, N.A.* (7th.Cir. 2012), 673 F.3d at p.
556 ................................................................................10

**Statutes**

*12 U.S.C. § 2605(f)(1)*.........................................................25

*12 U.S.C. § 2605(f)(3)*.........................................................25

*12 U.S.C., §2601 et seq.* ......................................................1

*24 CFR, §3500 et seq.* .........................................................1

*28 U.S.C. § 1332* ...............................................................1

*28 U.S.C. § 1332( c )(1)*.......................................................3

*28 U.S.C. § 1332(a)*............................................................3

*Business & Professions Code, §17200 et seq.*..........................25

California Business & Professions Code, §17200 .........................1

Code Civ. Proc. §§760.010-764.080........................................1

*Pub.L. No. 110–343; 122 Stat. 3765* ....................................10

*Rest. 2d Torts, §§623A, 324* ................................................1

**Other Authorities**

*OCC No. AA-EC-11-20, Board of Governors Docket Nos. 11-051-
B-SC-1, 11-051-B-SC-2, FDIC-11-194b, OTS No. 11-040,
FHFA No. EAP-11-01* .......................................................6

*OCC 2011-052*...................................................................7

*OCC No. AA-EC-11-20*.........................................................6

*OOC 2013-130, Amends 2011-052*.........................................7

*OTS No. 11-040* .................................................................6

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

**Treatises**

Chiles & Mitchell, *HAMP: An Overview of the Program and Recent Litigation Trends* (2011) 65 Consumer Fin. L.Q. Rep. 194, 194–197 ................................................................. 10

*Hearing on Subprime Lending And Securitization And Government Sponsored Enterprises, April 7, 2010* ...................... 5

**Regulations**

Supplemental Directive 09–01 .................................................. 10

**Articles**

*BBC News, September 26, 2008* .............................................. 6
*Bloomberg.com, October 23, 2008* ......................................... 6
*Federal Reserve Board of Governors press release November 23, 2008* ............................................................................... 6
*Financial Times, December 7, 2012* ....................................... 6
*Financial Times, May 29, 2008* .............................................. 6
*Los Angeles Times,* January 12, 2015 ..................................... 9
*MFI-MIAMI.com,* March, 2015 ............................................... 10
*Moneynews, January 8, 2013* ................................................. 6
*The Plain Dealer, November 16, 2008* ................................... 6
*The Wall Street Journal, September 15, 2008* ......................... 6

TABLE OF AUTHORITIES

**COMES NOW** PLAINTIFF, PAUL J. CROSKREY, WHO COMPLAINS AND ALLEGES AS FOLLOWS:

## I.    PRELIMINARY STATEMENT

1.    This is the Second Amended complaint ("SAC"). Having read the original complaint and the First Amended Complaint ("FAC"), the court is already familiar with the introductory material the plaintiff has asked the court to review. That introductory material is the same in this SAC, except for the following paragraphs that contain new information relating to one or more of the defendants: 16 (same wording with added emphasis), 26, 27, 28, 29.

## II.    STATEMENT OF THE CASE

2.    Plaintiff institutes this action for actual and compensatory damages, statutory damages, rescission, punitive damages, attorney fees, and costs of this action against defendants for violations of the following federal statutes and state law claims:

a.    Slander Of Title, *Rest. 2d Torts, §§623A, 324;*

b.    Real Estate Settlement Procedure Act, *12 U.S.C., §2601 et seq.,* (hereinafter RESPA), and Regulation X, *24 CFR, §3500 et seq.;*

c.    California Business & Professions Code, §17200;

d.    Breach of Implied Covenant of Good Faith and Fair Dealing;

e.    Quiet Title, Code Civ. Proc. §§760.010-764.080;

f.    Declaratory Relief

## III.    JURISDICTION AND VENUE

3.    This Court has jurisdiction over this matter under *28 U.S.C. § 1332* as it is a civil action between citizens of different states and as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**A.    Complete Diversity of Citizenship**

4.    Federal courts have jurisdiction over diversity cases in order to ensure citizens of different states can adjudicate their disputes in a neutral forum. See

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

*Bank of United States v. Devaux*, 9 U.S. (5 Cranch) 61, 87 (1809) (Marshall, C. J.).

5.    Complete diversity of citizenship exists here because plaintiff is a citizen of California, and neither OCWEN LOAN SERVICING LLC (hereinafter "OCWEN"), HSBC BANK USA, N.A., as trustee for the registered holders of NOMURA HOME EQUITY LOAN, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-HE3 (hereinafter "HSBC"); MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (hereinafter "MERS"), nor WESTERN PROGRESSIVE, LLC (hereinafter "WESTERN") are citizens of California, the forum state.

6.    Plaintiff PAUL J. CROSKREY is a citizen of California, residing at 23520 Middle Camp Road, Twain Harte, California.

7.    OCWEN is a diverse defendant, because OCWEN is a Delaware Limited Liability Partnership with its principal place of business in Florida. Plaintiff is informed and believes, and thereon alleges that Ocwen Corp. purchased Litton Loan Servicing LP (not a defendant herein) from Goldman Sachs in June, 2011, and renamed it Ocwen Loan Servicing LLC.

8.    HSBC is a diverse defendant, because HSBC is a National Association organized under the laws of the United States, and is a wholly owned subsidiary of HSBC Holdings, PLC, which is a British multinational banking and financial services company headquartered in London, United Kingdom. Neither HSBC Holdings, PLC, nor its subsidiary HSBC are California citizens for purposes of diversity jurisdiction.

9.    MERS is a diverse defendant, because MERS is a Delaware corporation conducting business as a financial services company in the State of California, with its principal place of business at 1818 Library Street, Ste 300, Reston, Virginia, 20190. MERS, aka "The MERS System" aka "MERS Residential," is operated by MERSCORP Holdings, Inc., a Delaware corporation located at the same address. "A corporation shall be deemed to be a citizen of any State by

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

VERIFIED SECOND AMENDED COMPLAINT FOR DAMAGES

1  which it has been incorporated and of the State where it has its principal place

2  of business." (*28 U.S.C. § 1332(c)(1)*). The Supreme Court held that "'principal

3  place of business' is best read as referring to the place where a corporation's

4  officers direct, control, and coordinate the corporation's activities. It is the

5  place that Courts of Appeals have called the corporation's 'nerve center.' And in

6  practice it should normally be the place where the corporation maintains its

7  headquarters." (*Hertz Corporation v. Friend*, 130 S.Ct. 1181, 1 199 (2010)).

8  10.   WESTERN is a diverse defendant, because WESTERN is a Delaware

9  corporation conducting business as a financial services company in the State

10  of California, with its principal place of business at 2002 Summit Blvd Ste 600,

11  Atlanta, Georgia, 30319.

12  **B.     The Matter in Controversy is Satisfied**

13  11.   Under *28 U.S.C. § 1332(a)*, the matter in controversy must exceed

14  $75,000. The amount in controversy here exceeds this statutory minimum as

15  the mortgage loan balance at issue in this lawsuit is $359,650.

16  12.   Both the Supreme Court and the Court of Appeals for the Ninth Circuit

17  have held "it is well established that the amount in controversy is measured by

18  the value of the object of the litigation," (*Hunt v. Washington State Apple*

19  *Advertising Com'n*, U.S. 333, 347 (1977); Cohn v. Petsmart, Inc., 281 F.3rd 837,

20  840 (9th Cir. 2002)). In actions challenging the foreclosure of real property by

21  the lender pursuant to a borrower's default on a mortgage loan, the value of the

22  object of litigation is measured either by the value of the underlying loan or the

23  value of the property securing the loan. See *Garfinkle v. Wells Fargo Bank*, 483

24  F.2d 1074, 1076 9 (9th Cir. 1973); *Cabriales v. Nationstar Loan Servs.*, Case

25  No. C 10-161 MEJ, 2010 WL 761081 (N.D.Cal. 2010); *Reyes v. Wells Fargo*

26  *Bank, N.A.*, Case No. C-10-01667 JCS , 2010 WL 2629785 (N.D.Cal. 2010);

27  *Chapman v. Deutsche Bank Nat. Trust Co.*, 651 F.3d 1039, 1045 fn.2 (9th Cir.

28  2011).

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

VERIFIED SECOND AMENDED COMPLAINT FOR DAMAGES

13.    As stated above this lawsuit meets the amount in controversy requirement because the value of the underlying mortgage loan balance at issue in this lawsuit is at least $359,650.

14.    Whenever in this complaint reference is made to any act of defendants, such allegation shall be deemed to mean the act of each defendant acting individually and jointly with the other defendants named in that cause of action.

## IV.    BACKGROUND INFORMATION

### A.    The Home-Ownership Mortgage Industry Suffered A Collapse That Left A Few Major Players Still Standing, Including The Defendants

15.    While the Court may be aware of the current state of affairs in the home-ownership mortgage industry, out of an abundance of caution, the plaintiff presents here a brief summary of what has transpired in the home-ownership mortgage industry at large as it relates to the defendants, and then more specifically as it affects both the defendants and the plaintiff.

16.    In 1995, before the subprime mortgage market imploded, the larger players formed MERS, aka "The MERS System" aka "MERS Residential," which is operated by the Delaware corporation MERSCORP Holdings, Inc. MERS is the owner of record (or the owner's nominee) of the security interest arising from many mortgages extended by lenders, investors and their loan servicers and recorded in county land records. Through MERS, lenders and investors who are the real parties in interest avoid the need to file assignments in county land records, and have a central source of information and tracking for mortgage loans. Although MERS was established to facilitate the transfer of mortgage note ownership and trusteeship, during the last several years <u>MERS has played an active role in the obfuscation of the paper trails in thousands of mortgages across the country, where the sudden and catastrophic failure of bank after bank caused the physical transfer of multiple truck-loads of</u>

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

VERIFIED SECOND AMENDED COMPLAINT FOR DAMAGES

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

documents from their original locations to subsequent locations with virtually no way to track or document the process or recover original paperwork for any individual set of mortgage transaction documents.

17.   Testimony given to the Financial Crisis Inquiry Commission by Richard M. Bowen III on events during his tenure as the Business Chief Underwriter for Correspondent Lending in the Consumer Lending Group for Citigroup (where he was responsible for over 220 professional underwriters) (see *Hearing on Subprime Lending And Securitization And Government Sponsored Enterprises, April 7, 2010*) suggests that by the final years of the U.S. housing bubble (2006–2007), the collapse of mortgage underwriting standards was endemic. His testimony stated that by 2006, 60% of mortgages purchased by CitiGroup from some 1,600 mortgage companies were "defective" (were not underwritten to policy, or did not contain all policy-required documents) – this, despite the fact that each of these 1,600 originators was contractually responsible (certified via representations and warrantees) that its mortgage originations met Citigroup's standards. Moreover, during 2007, "defective mortgages (from mortgage originators contractually bound to perform underwriting to CitiGroup's standards) increased...to over 80% of production."

18.   While this Court does not need an in-depth education about the causes of the financial collapse, several of the Financial Crisis Inquiry Commission's specific comments are pertinent here:

- We conclude dramatic failures of corporate governance and risk management at many systemically important financial institutions were a key cause of this crisis

- We conclude a combination of excessive borrowing, risky investments, and lack of transparency put the financial system on a collision course with crisis.

- We conclude there was a systemic breakdown in accountability and ethics.
  *From the Summary of the Hearing on Subprime Lending And Securitization And Government Sponsored Enterprises, April 7, 2010*

19.  When the dust had cleared, the remaining major players were Bank of America, that acquired Merrill Lynch (see *The Wall Street Journal, September 15, 2008*), and found itself burdened with about $50 billion in liabilities resulting from Countrywide toxic loans (see *Moneynews, January 8, 2013*); PNC that, in a questionable transaction, used TARP funds to acquire a failing National City Bank (see *The Plain Dealer, November 16, 2008*); J.P. Morgan Chase, that purchased Washington Mutual from federal regulators (see *BBC News, September 26, 2008*), and Bear Sterns (see *Financial Times, May 29, 2008*); Wells Fargo, that acquired Wachovia in a bidding war with Citigroup (see *Bloomberg.com, October 23, 2008*); Citigroup, bailed out by the Federal Reserve (see *Federal Reserve Board of Governors press release November 23, 2008*); OneWest, formed by IMB HoldCo LLC, that acquired the assets of IndyMac Bank; and Deutsche Bank, that had avoided a bailout by a questionable misvaluation of a $130 billion portfolio of complex derivatives, known as *leveraged super senior* trades, allowing the bank to avoid losses of $4 to $12 billion and helping it avoid a government bailout (see *Financial Times, December 7, 2012*).

**B.    The Defendants Have Been, And Are, Deeply Enmeshed In A Morass Of Questionable Loan Deals, Internal Reassignments Of Trusteeships, Note Ownership Transfers, And Foreclosures That Defy A Rational Sorting Out**

20.  On April 12, 2011, the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, and the Federal Housing Finance Agency signed a consent order with MERS regarding its questionable mortgage servicing practices which are, in part, the subject of the within matter (*OCC No. AA-EC-11-20, Board of Governors Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2, FDIC-11-194b, OTS No. 11-040, FHFA No. EAP-11-01*).

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

21.  On April 13, 2011, the Comptroller of the Currency signed a consent order with HSBC regarding its questionable mortgage servicing practices which are, in part, the subject of the within matter (*OCC 2011-052).*

22.  On September 1, 2011, the Board of Governors of the Federal Reserve System signed a consent order with Goldman Sachs (which sold Litton Loan Servicing LP to Ocwen Corp, where it was subsequently renamed Ocwen Loan Servicing LLC) regarding its questionable mortgage servicing practices which are, in part, the subject of the within matter (*Board of Governors Docket Nos. 11-112-B-HC, 11-112-B-SM).*

23.  On September 2, 2011, the Federal Housing Finance Agency (FHFA ) filed seventeen lawsuits against major banks (including HSBC) in New York state and federal courts, and in federal court in Connecticut, to recoup $196 billion spent on mortgage-backed securities bought by Fannie Mae and Freddie Mac. The FHFA accuses the banks of misleading Fannie Mae and Freddie Mac about the soundness of the mortgages underlying the securities.

24.  On February 28, 2013, the Comptroller of the Currency and the Board of Governors of the Federal Reserve System released amendments to their enforcement actions against thirteen mortgage servicers (including HSBC) for deficient practices in mortgage loan servicing and foreclosure processing. The amendments require the servicers to provide $9.3 billion in payments and other assistance to borrowers (*OOC 2013-130, Amends 2011-052*).

**C.     Over The Last Two Years, Defendant OCWEN Has Paid Nearly $2.3 Billion In Fines, Penalties, and Restitution.**

25.  On December 19, 2013, the Consumer Financial Protection Bureau (CFPB), together with attorneys general and state banking regulators in 49 states, and the District of Columbia, filed a consent court order requiring OCWEN Financial Corporation, and its subsidiary, OCWEN Loan Servicing LLC, to provide $2 billion in first lien principal reduction to underwater

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

borrowers. The consent order addresses OCWEN's misconduct during the mortgage servicing process. OCWEN must also refund $125 million to the nearly 185,000 borrowers who have already been foreclosed upon and OCWEN must adhere to significant new homeowner protections. The consent order requires that OCWEN follow the servicing standards set up by the 2012 National Mortgage Settlement (NMS) with the five largest banks (*CFPB 11/19/2013 Consent Order with OCWEN*).

26.   On May 15, 2014, a class action lawsuit was filed against OCWEN in the U.S. District Court for the Eastern District of Pennsylvania alleging serious misconduct in the handling of documents by OCWEN. (*DEMPSEY v. OCWEN LOAN SERVICING, LLC*, US District Court for Eastern Pennsylvania, 2:14-cv-02824-RBS)

27.   On December 22, 2014, OCWEN signed a consent order with the New York State Department of Financial Services that included a fine of $100 million and $50 million in restitution to New York victims of OCWEN's illegal activities. This consent order was for violations of the consent order signed by OCWEN on December 19, 2013 (see ¶25). Among other things in the consent order, a limited review by the Compliance Monitor of 478 New York loans that OCWEN had foreclosed upon revealed 1,358 violations of OCWEN's legal obligations, or about three violations per foreclosed loan. These violations included:

- failing to confirm that it had the right to foreclose before initiating foreclosure proceedings;
- failing to ensure that its statements to the court in foreclosure proceedings were correct;
- pursuing foreclosure even while modification applications were pending ("dual tracking");
- failing to maintain records confirming that it is not pursuing foreclosure of servicemembers on active duty; and

VERIFIED SECOND AMENDED COMPLAINT FOR DAMAGES

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

- failing to assign a designated customer care representative.

As part of the settlement, OCWEN Chairman William Erbey was forced to resign as chairman of OCWEN and four related companies, Altisource Portfolio Solutions, S.A., Altisource Residential Corporation, Altisource Asset Management Corporation, and Home Loan Servicing Solutions Ltd. (*New York State Department of Financial Services* consent order with OCWEN Financial Services dated December 22, 2014)

28. In January, 2015, The *Los Angeles Times* reported that the State of California will suspend OCWEN's mortgage license in California for substantially the same reasons contained in the December 22, 2014, New York State Dept. of Financial Services consent order (see ¶27). (*Los Angeles Times*, January 12, 2015)

29. In February, 2015, bond holders in 119 Residential Mortgage Backed Securities Trusts with an original balance of more than $82 billion issued a Notice of Non-Performance to the Trustees of those Trusts, regarding the material failures of OCWEN as Servicer and/or Master Servicer, to comply with its covenants and agreements under governing Pooling and Servicing Agreements. Their investigation established the following:

- Use of Trust funds to "pay" OCWEN's required "borrower relief" obligations under a regulatory settlement, through implementation of modifications on Trust- owned mortgages that have shifted the costs of the settlement to the Trusts and enriched OCWEN unjustly;

- Employing conflicted servicing practices that enriched OCWEN's corporate affiliates, including Altisource and Home Loan Servicing Solutions, to the detriment of the Trusts, investors, and borrowers;

- Engaging in imprudent and wholly improper loan modification, advancing, and advance recovery practices;

- Failure to maintain adequate records,  communicate effectively with

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

borrowers, or comply with applicable laws, including consumer protection and foreclosure laws; and,

- Failure to account for and remit accurately to the Trusts cash flows from, and amounts realized on, Trust-owned mortgages.

(*MFI-MIAMI.com*, March, 2015)

30.  The within matter details just one of the tens of thousands of illegally and fraudulently mishandled mortgages for which OCWEN has paid fines, penalties, and restitutions of nearly $2.3 billion over the last two and a half years.

## D.  The Home Affordable Modification Plan (HAMP)

31.  The following brief treatise on HAMP is presented to ensure that the court completely understands the HAMP process, since this is central to this complaint. It is quoted from *Bushell v. JPMorgan Chase Bank, N.A. (Cal. App., 2013)*, pp 7-11:

> When financial markets nearly collapsed in the late summer and early fall of 2008, Congress enacted the Emergency Economic Stabilization Act of 2008 (*Pub.L. No. 110–343; 122 Stat. 3765*). (*Wigod v. Wells Fargo Bank, N.A.* (7th.Cir. 2012), 673 F.3d at p. 556. (*Wigod*)) The centerpiece of this act was the federal Troubled Asset Relief Program (TARP) which, in addition to providing a massive infusion of liquidation to the banking system, required the United States Department of the Treasury (hereafter, Treasury) to implement a plan to minimize home foreclosures. (See *Wigod*, at p. 556; 12 U.S.C. § 5219(a).)
>
> That plan was HAMP, introduced in February 2009, and funded by a $50 billion set-aside of TARP monies to induce lenders to refinance mortgages to reduce monthly payments for struggling homeowners. (*Wigod*, supra, 673 F.3d at p. 556.) Specifically, HAMP enables certain homeowners who are in default or at imminent risk of default to obtain "permanent" loan modifications, by which their monthly mortgage payments are reduced to no more than 31 percent of their gross monthly income for a period of at least five years. Lenders receive from the government a $1,000 incentive payment for each permanent HAMP modification, along with other incentives. (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 (*West*) 214 Cal.App.4th at pp. 787–788, 154 Cal.Rptr.3d 285; *Wigod*, supra, 673 F.3d at pp. 556–557, 565; Supplemental Directive 09–01, supra, pp. 2–6, 8–10, 14–18; see Chiles & Mitchell, *HAMP: An Overview of the Program and Recent Litigation Trends* (2011) 65 Consumer Fin. L.Q. Rep. 194, 194–197 (hereafter, Chiles & Mitchell).)
>
> Supplemental Directive 09–01, a regulation the Treasury issued in April 2009, delineates HAMP's eligibility requirements and modification procedures. (Supplemental Directive 09–01, *supra*, pp. 2–18.) Lenders

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

must perform HAMP loan modifications in accordance with Treasury regulations. (*West, supra*, 214 Cal.App.4th at p. 787, 154 Cal.Rptr.3d 285; *Wigod, supra*, 673 F.3d at p. 556.)

As for HAMP's eligibility requirements, under Supplemental Directive 09–01, before a lender offers a TPP to a distressed borrower, the lender (1) has already found that the borrower satisfies certain simple threshold requirements under HAMP regarding the basic nature of the loan obligation (e.g., a certain loan amount balance; property is primary residence; monthly mortgage payment greater than 31 percent of monthly gross income); (2) has already calculated a trial modification payment amount using a "waterfall" method of specified steps that drops the borrower's monthly mortgage payment to the HAMP target figure of 31 percent of monthly gross income; and (3) most significantly from the lender's perspective, has already determined, pursuant to application of a net present value (NPV) test based in part on income/financial representations provided by the borrower, that it is more profitable to modify the loan under HAMP than to foreclose upon it. (*West, supra*, 214 Cal.App.4th at pp. 787–788; *Wigod, supra*, 673 F.3d at pp. 556–557, 565; Supplemental Directive 09–01, *supra*, pp. 2–5, 8–10, 14–18; see Supplemental Directive 09–01, p. 4 ["If the NPV result for the modification scenario is greater than the NPV result for no modification, . the [lender] MUST offer the modification," even if a third party investor is involved (emphasis in original) ]; see Chiles & Mitchell, *supra*, 65 Consumer Fin. L.Q. Rep., pp. 194–197.) Furthermore, Supplemental Directive 09–01 specifies that, upon receiving the signed TPP from the borrower (with the income verification documents), the lender "must confirm" that the borrower continues to meet these HAMP eligibility criteria and, if not, the lender "should promptly communicate" that fact in writing to the borrower "and consider the borrower for another foreclosure prevention alternative." (Supplemental Directive 09–01, *supra*, p. 15.)

In short, then, when a lender offers a TPP to a distressed borrower, the lender effectively has already determined that the borrower qualifies for HAMP, assuming that the borrower's representations on which modification is based remain true and correct. (Supplemental Directive 09–01, *supra*, pp. 15, 17–18.) After determining a borrower qualifies under HAMP in this manner, the lender implements the HAMP modification process in two steps.

In step one, the lender (1) provides the borrower with a TPP that sets forth the trial payment terms the lender has calculated using the waterfall method; (2) instructs the borrower to sign and return the TPP, a financial hardship affidavit, and income verification documents (if not previously obtained from the borrower); and (3) requests the first trial payment. (*West, supra*, 214 Cal.App.4th at pp. 787–788, 154 Cal.Rptr.3d 285; *Wigod, supra*, 673 F.3d at p. 557; Supplemental Directive 09–01, *supra*, pp. 14–15; Chiles & Mitchell, supra, 65 Consumer Fin. L.Q. Rep., pp. 196–197.)

As for step two of the HAMP modification process, after the trial period, if the borrower has complied with all terms of the TPP—including making all required trial payments and providing all required documentation—and if the borrower's representations on which modification is based remain true and correct, the lender "must offer" the borrower a permanent loan modification (in step two, the lender calculates the terms of the permanent modification using the verified income information). (*West, supra*, 214 Cal.App.4th at pp. 786, 788, 154 Cal.Rptr.3d 285; *Wigod, supra*, 673 F.3d at p. 557; Supplemental Directive 09–01, *supra*, pp. 14–15; Chiles &

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

Mitchell, *supra*,65 Consumer Fin. L.Q. Rep., pp. 196–197.) 5 This "must offer" mandate is because, as *West* explains, citing *Wigod*, "When [a lender] received public tax dollars under [TARP], it agreed to offer TPP's and loan modifications under HAMP according to [regulations] . issued by the Department of the Treasury. (*Wigod, supra*, 673 F.3d at p. 556.) Under … [the] HAMP [Supplemental [D]irective 09–01 [regulation].., if the lender approves [ (i.e., offers) ] a TPP, and the borrower complies with all the terms of the TPP and all of the borrower's representations remain true and correct, the lender must offer a permanent loan modification. (*Wigod, supra*, at p. 557.) [Supplemental] Directive 09–01, *supra*, at page 18 states: 'If the borrower complies with the terms and conditions of the [TPP], the loan modification will become effective on the first day of the month following the trial period.' " (*West, supra*, 214 Cal.App.4th at pp. 796–797, 154 Cal.Rptr.3d 285, fn. omitted.)

## V.   COMMON FACTUAL ALLEGATIONS

32.   On or about December 7, 2005 (hereinafter "Original Execution Date"), Plaintiff executed the DOT and initial mortgage note (hereinafter "Note") to become the owner in fee simple of Title to the property described below, situated in Tuolumne County. The APN is 040-290-04. The property is located in the Twain Harte. The street address is 23520 Middle Camp Road, , California (hereinafter "Property"), and is particularly described as follows:

PARCEL 1 AS SHOWN AND DESIGNATED ON THAT CERTAIN PARCEL MAP FILED IN THE OFFICE OF THE COUNTY RECORDER OF TUOLUMNE COUNTY, CALIFORNIA ON DECEMBER 29, 1982 IN VOLUME 18, PAGE 100 OF PARCEL MAPS.

The beneficiary of the DOT was MERS, the Lender was HORIZON DIRECT, INC, ("HORIZON") (not a defendant herein), and the trustee was CHICAGO TITLE COMPANY ("CHICAGO TITLE") (not a defendant herein). On information and belief, HORIZON recorded said DOT on or about December 16, 2005, with the county Recorder under recordation number 2005026868 (*see certified copies of the DOT and Note, attached hereto respectively as Exhibits "A" & "B"*).

33.   The Note declares a face amount of $359,650.00.

34.   The Note declares an initial interest rate of 7%.

35.   The Note declares that plaintiff's first payment would be due on February

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

1, 2006.

36.   The Note declares that the payment would be $2,097.96 for the first 120 months, and $2,788.36 thereafter.

37.   The beneficiary of the Note was HORIZON (not a defendant herein). On information and belief, HORIZON was the original servicer of the Note. There is no document designating HORIZON as the servicer, however, ¶1 of the Note indicates that HORIZON is the Note Holder, and will receive payments (*see Exhibit "B"*).

38.   On or about August 30, 2006, Nomura Home Equity Loan, Inc., Home Equity Loan Trust, Series 2006-HE3 (hereinafter "HE3") was filed with the Securities and Exchange Commission (SEC) (*see a true and correct copy of the SEC Filing Detail for HE3, attached hereto as Exhibit "C"*).

39.   On information and belief, the Pooling and Servicing Agreement for HE3 is identical to that for Nomura Home Equity Loan, Inc., Home Equity Loan Trust, Series 2006-HE1 (hereinafter "HE1"), except for the listing of the categories of mortgage and their value included in each series (*see a true and correct copy of the Pooling and Servicing Agreement for HE1, attached hereto as Exhibit "D"*).

40.   The Pooling and Servicing Agreement for HE1 (and by analogy for HE3) requires in Exhibit 1 to that agreement, "Contents of Mortgage File," the following (*see Exhibit "D", pp 147-148*), in pertinent part:

> a. the original Mortgage Note (including all riders thereto) bearing all intervening endorsements necessary to show a complete chain of endorsements from the original payee, endorsed in blank, via original signature, and, if previously endorsed, signed in the name of the last endorsee by a duly qualified officer of the last endorsee...;
> b. ...
> c. ...
> d. ... the original Mortgage and the assignment thereof to MERS®, with evidence of recording indicated thereon; or, if the original Mortgage with evidence of recording ... has been lost ..., a photocopy of such Mortgage...with the recording information thereon certified by such public recording office to be a true and

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

complete copy of the original recorded Mortgage;

e. ...

f. the originals of any intervening assignments of mortgage with evidence of recording thereon evidencing a complete chain of ownership from the originator of the Mortgage Loan to the last assignee...

41.   Section 2.01 of the Pooling and Servicing Agreement for HE1 (and by analogy for HE3) states in pertinent part: "The Depositor, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the use and benefit of the Certificate holders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund." (*See Exhibit "D" p 42*) The DOT does <u>not</u> include all intervening endorsements showing a complete chain of the title from the originator, HORIZON (not a defendant herein), to the trustee, HSBC, as described in section 2.01 of the Pooling and Servicing Agreement.

42.   On information and belief, sometime between the Original Execution Date and August 30, 2006, the DOT was made a part of HE3[1].

43.   On information and belief, on or about August 29, 2006, MERS assigned the DOT to HSBC in a document dated June 28, 2011 (hereinafter "DOT Assignment 1") (*see a true and correct copy of Assignment of Deed of Trust, dated June 28, 2011, attached hereto as Exhibit "E"*). This document does not appear to have been recorded, and there is no record in the County Recorder's Office of such recordation.

44.   DOT Assignment 1 was prepared by Cory Messer, apparently employed by OCWEN, and signed by John Coaster, Vice President, MERS. Coaster signed the document in the County of Palm Beach Florida (even though MERS is located in Reston, Virginia) before a Notary named Corey Messer, dated June 28, 2011.

45.   There are no endorsements on the DOT and Note on file with the County

---

[1] But see *¶61 below for discussion of date inconsistency*

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

Recorder, other than the original signatures of the plaintiff as the purchaser of the Property. This is non-conforming with the Pooling and Servicing Agreement, bringing into question the validity of the chain of title, and raising the question of whether OCWEN and HSBC have standing with respect to the DOT and Note, and even whether the DOT is legally part of HE3.

46.     On or about November, 2009, OCWEN contacted plaintiff by phone, offering to work with him on a Home Affordable Modification Plan (HAMP) Agreement, because he was "upside-down" in his value-to-debt ratio on his home. The plaintiff was not delinquent on his payments, and was not in danger of becoming delinquent. OCWEN accepted his HAMP application, provisionally approved it, and presented plaintiff with a Trial Payment Period (TPP – the first step in a HAMP Agreement approval process) (*see ¶31 above*) (*see a true and correct copy of Trial Payment Period Agreement dated December 16, 2010, attached hereto as Exhibit "L"*). One provision of the TPP was that the plaintiff not make any payments for ninety days. This apparent delinquency concerned the plaintiff, and he presented his concerns to OCWEN. The OCWEN representative assured him that they would not record any late payments on his credit report, and that the "delinquency" was necessary for the HAMP Agreement to take place. Consequently, the plaintiff complied with OCWEN's recommendation.

47.     In February, 2011 (incorrectly stated as 2010 in the FAC), OCWEN presented plaintiff with the final HAMP Agreement. The HAMP Agreement included a new principal amount of $372,621.56, an increase over the original amount owing of $12,971.56, with a monthly payment of $1,499.83 at 2% for the first five years. His current payment was $2,097.96. The HAMP Agreement also included a large balloon payment at the end of the contract.

48.     The plaintiff refused to sign the HAMP agreement as presented, because he had not been informed of the increase in principal, nor about the balloon

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

payment. The HAMP Agreement did not specify the size of the balloon payment, and OCWEN refused to inform the plaintiff what it would be. He protested this to OCWEN several times in telephone conversations with them.

49.     OCWEN assigned Ramyasheree V as plaintiff's "Case Manager," however, despite calling Ramyasheree V several times, leaving voicemail message, the plaintiff never actually spoke with Ramyasheree V, and was never contacted by him.

50.     OCWEN informed the plaintiff that if he did not sign the HAMP Agreement they would commence default proceedings against him, and report his ninety day delinquency to the credit bureaus, which would have ruined the plaintiff's ability to continue using long established lines of credit for his small business. The plaintiff demanded an amortization schedule for the HAMP Agreement so he could understand the effect of the balloon payment. OCWEN refused, and for fourteen months, the plaintiff continued to send OCWEN faxes, emails, and certified letters requesting this information (*see true and correct copies of correspondence between plaintiff and OCWEN dated between February, 2010, and April, 2011, attached hereto as Exhibit "F"*).

51.     On or about April 13, 2011, the plaintiff and OCWEN executed a Home Affordable Modification Plan (HAMP) Agreement (*see HAMP Agreement, dated April 13, 2011, attached hereto as Exhibit "G"*). The details of the HAMP Agreement are listed above in ¶47. The plaintiff executed the Agreement under protest, since the alternative was very damaging to his credit and his small business lines of credit.

52.     Despite their promises to the contrary, once the executed HAMP Agreement was in place, OCWEN registered late payments of thirty, sixty, and ninety days against the Plaintiff, and WESTERN, as OCWEN's agent, commenced foreclosure procedures. The plaintiff spoke with the OCWEN Home Retention Department several times, He was told by them that he should "just

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

walk away from his investment."

53.     On March 13, 2013, MERS once again assigned the DOT to HSBC in a document dated March 13, 2013  (hereinafter "DOT Assignment 2")  (*see a true and correct copy of Assignment of Deed of Trust dated March 13, 2013, attached hereto as Exhibit "I"*). This document does not appear to have been recorded, and there is no record in the County Recorder's Office of such recordation.

54.     DOT Assignment 2 was prepared by Joe Simmons, apparently employed by OCWEN, and signed by Yamali Martinez, Assistant Secretary, MERS. Martinez signed the document in the County of Palm Beach Florida (even though MERS is located in Reston, Virginia) before a Notary named Russell Castillo, dated March 13, 2013.

55.     On March 19, 2013, HSBC filed a Substitution of Trustee, replacing itself as Trustee with WESTERN (hereinafter "Substitution of Trustee") (*see a true and correct copy of Substitution of Trustee dated March 19, 2013, attached hereto as Exhibit "J"*). This document was recorded with the County Recorder six months later on August 28, 2013.

56.     The Substitution of Trustee was signed by Andy Viravong, Contract Management Coordinator for OCWEN, acting as attorney-in-fact for HSBC. Viravong signed the document in the County of Palm Beach Florida before a Notary named Allyson Rivera, dated March 19, 2013.

57.     Recordation of the Substitution of Trustee was requested by Premium Title of California, and was mailed to WESTERN following recordation.

58.     On July 24, 2013, for the third time MERS assigned the DOT to HSBC in a document dated July 24[2], 2013  (hereinafter "DOT Assignment 3")  (*see a true and correct copy of Assignment of Deed of Trust dated July 24, 2013, attached hereto as Exhibit "K"*). This document was recorded with the County Recorder

---

[2] The original date on DOT Assignment 3 was July 19, 2013, but the number 19 was crossed out, and the number 24 was hand-written nearby. The modification was initialed with "CJF," the initials of the authenticating Notary (*see Exhibit "K"*).

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

1    on October 22, 2013.

2    59.    DOT Assignment 3 was prepared by Joe Simmons, apparently employed

3    by OCWEN, and signed by Leticia N. Arias, Assistant Secretary, MERS. Arias

4    signed the document in the County of Palm Beach Florida (even though MERS

5    is located in Reston, Virginia) before a Notary named Christian J. Ferrer, dated

6    July 24, 2013 (*see Note 2 below*).

7    60.    DOT Assignment 3 was recorded by the County Recorder on October 22,

8    2013 (*this recordation date was incorrectly listed here as August 28, 2013, in the*

9    *FAC, but correctly listed everywhere else*). Recordation of DOT Assignment 3

10    was requested by Financial Dimensions, Inc. Mailing was requested to two

11    places. Under preparer Joe Simmon's name on the left-top, mailing following

12    recordation was requested to OCWEN. Under the recordation stamp on the

13    right-top, mailing following recordation was requested to Financial Dimensions,

14    Inc.

15    61.    Presuming that DOT Assignments 1 & 2 are "unofficial," because they

16    were not recorded, then DOT Assignment 3 (MERS to HSBC) is the operative

17    DOT Assignment. It is dated July 24, 2013 (recorded October 22, 2013). Before

18    this date (whether July 24 or October 22), MERS was the Trustee, because the

19    DOT had not yet been assigned to HE3. The Substitution of Trustee (HSBC to

20    WESTERN) is dated March 19, 2013 (recorded August 28, 2013); this is four

21    months before DOT Assignment 3 (or two months if you use the recordation

22    dates) – MERS was still the Trustee, no matter which date set is used.

23    Consequently, HSBC could not have substituted WESTERN as Trustee for

24    itself.

25    62.    On June 6, 2013, WESTERN hired Altisource (a company owned by

26    OCWEN) to enter plaintiff's house while he was at work, to "winterize" his

27    "unoccupied" home. While there, Altisource went through his personal files,

28    and confiscated all the documents they could find related to the within matter,

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

1    and then they changed the locks.

2    63.    Apparently, WESTERN presumed that it was substituted in as Trustee on

3    March 19, since it took its action described in ¶62 above on June 6. If the

4    recording date of August 28 is used, then the hiring of Altisource as it agent

5    would have been invalid.

6    64.    On December 13, 2013, the plaintiff filed a small claims case against

7    OCWEN and several senior OCWEN managers. He prevailed, and on February

8    20, 2014, a judgment for $5,065 was entered in his favor, and he received a

9    writ of execution. OCWEN simply ignored his writ of execution, so the plaintiff

10   attached liens to several OCWEN assets, whereupon OCWEN paid the

11   judgment (*see true and correct copies of small claims action and judgment dated*

12   *December 13, 2013, and February 20, 2014, attached hereto as Exhibit "H"*).

13   65.    Plaintiff is informed and believes, and thereon alleges that the conduct of

14   defendants, and each of them, as alleged above, is part of a pattern and

15   practice of predatory lending. Moreover, plaintiff alleges that defendants, and

16   each of them, regularly made and make loans they knew, know, should have

17   known, or should know, cannot be repaid, thereby exposing its financially

18   unsophisticated borrowers to unwarranted risk of default and foreclosure.

19   66.    Plaintiff alleges on information and belief that OCWEN did not clearly or

20   conspicuously disclose or explain the terms of its loan modification products.

21   67.    Plaintiff alleges on information and belief that the purpose of entering

22   into the above-described mortgage loan transactions was for plaintiff to

23   eventually own the Property. This purpose was knowingly and intentionally

24   thwarted and indeed made impossible by defendants' actions alleged herein.

25   ///

26   ///

27   ///

28   ///

VERIFIED SECOND AMENDED COMPLAINT FOR DAMAGES

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

## VI.   CAUSES OF ACTION

### 1.   COUNT I
### SLANDER OF TITLE
### [Rest. 2d Torts, §§623A, 324]
### (ALL DEFENDANTS)

68.   Plaintiff repeats and realleges, and incorporates by reference herein, each and every allegation contained in paragraphs 1 through 67 of this complaint.

69.   "Slander or disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes the owner thereof some special pecuniary loss or damage." (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030 (2012) (internal quotation marks omitted) (*Sumner Hill*)). The elements of slander of title are: "(1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss." *Id*. A publication disparages a person's interest in land "[i]f the publication is reasonably understood to cast doubt upon the existence or extent of another's interest in land." *Id*. Pecuniary loss is an essential element of a slander of title claim. The pecuniary loss that can be recovered is restricted to "(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and [¶] (b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement." *Id*. (alteration in original) (emphasis removed).

70.   The initial slanderous publications are the recordations of the March 19, 2013, Substitution of Trustee on August 28, 2013 (*see* ¶¶*55-57*), and of the July 24, 2013, DOT Assignment 3 on October 22, 2013 (*see* ¶¶*58-60*). The second and third elements are met because HSBC (and therefore Ocwen, its agent) had no authority to appoint Western as trustee, since Horizon (through MERS) had not properly assigned the deed of trust to HSBC. (The first two

assignments to HSBC were not recorded. The third assignment was dated July 24, 2013 and recorded on October 22, 2013 (*see ¶¶43-44, 53-54, 58-60*). This convoluted and entirely unnecessary series of assignments and substitutions is clear evidence that the defendants deliberately obfuscated the document trail to cover up the fact that they had no authority to make the substitutions and transfers, and so acted with malice. The fourth element is met because the fraudulent recordations set into motion a whole series of events that have resulted in serious financial losses to the plaintiff, in an amount to be determined at trial. Furthermore, the Property value has decreased, simply by virtue of its uncertain status. It is well known that when a property goes into foreclosure, its market value plunges, because of the low-ball bidders for the property. In the within case, although the Property is not yet in foreclosure, its pre-foreclosure status is a matter of public record, so that its current value is significantly below what it would have been had none of this happened. The Property's initial appraisal value was $442,000. Its current low market value is $107,000, a loss of $335,000 that is a direct consequence of the recordation of the fraudulent March 19, 2013, Substitution of Trustee on August 28, 2013. Finally, the plaintiff has had to bear litigation expenses and attorney fees, in an amount to be determined at trial, which would not have been necessary had the defendants not taken the actions that initiated this lawsuit (see *Sumner Hill*, *Id.*)

71.  The plaintiff emphasizes that MERS was still the designated trustee when HSBC (as trustee) assigned WESTERN as trustee (*see ¶61*). Because MERS was the trustee, the assignment of WESTERN as trustee by HSBC was improper.

72.  Defendants, and each of them, caused a direct or indirect disparagement of plaintiff's title by their conspiracy to acquire a mortgage that they improperly moved into an RMB trust, inducing the plaintiff with financial threats to sign an unnecessary HAMP agreement, and originating a series of unauthorized

VERIFIED SECOND AMENDED COMPLAINT FOR DAMAGES

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

substitutions and transfers that had the effect of lowering the Property value by $335,000.[3] On information and belief, OCWEN orchestrated the process.

73.    OCWEN has threatened the plaintiff with foreclosure action, and has caused plaintiff's credit standing to be downgraded by its actions (*see ¶¶46-52*). Should OCWEN follow through with its threat, the plaintiff has no desire to return to court to readdress this matter. Instead, the plaintiff respectfully requests this court to issue a protective order that will halt or prevent any adverse action relating to the Property or the plaintiff by any defendant herein pending final resolution of this matter.

74.    MERS and HSBC were directly involved in the improper or fraudulent transfer of the DOT and Trusteeship from party to party.

75.    WESTERN was complicit in the improper or fraudulent transfer of the DOT and Trusteeship from party to party.

---

[3] Slander of Title begins when the parties create a funds portfolio that will used to fund mortgages that will eventually become derivatives in RMB trusts. The NOMURA HOME EQUITY LOAN, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-HE3 in the within matter is one of those RMB trusts. Unlike Fannie Mae and Freddie Mac, it is an unconventional RMB Trust that is insured using credit default swap (CDS) insurance instead of government insurance like Fannie Mae and Freddie Mac. Unconventional RMB trusts are structured so that mortgage mitigation deals do not allow a decrease in the principal amount of the loan, unlike Fannie Mae and Freddie Mac, which do. This increases the likelihood that a HAMP agreement will result in a default. CDS insurance is unregulated, and entirely non-transparent. OCWEN herein took out CDS insurance in the property, and then forced a default, so that it was paid by the CDS insurer who then becomes the beneficiary of the mortgage instrument, but in the background, so that OCWEN still controls the foreclosure process. OCWEN benefits by receiving payment in full, and the CDS owner benefits by being able to purchase the property for a fire-sale price at the foreclosure auction run by the online subsidiary of OCWEN, HUBZU. OCWEN charges HUBZU exorbitant fees (well above a typical Fannie Mae or Freddie Mac foreclosure auction fees), that HUBZU passes on to the victimized property owner. The CDS owner then sells the property at market rates, recovering his entire investment plus a significant profit.

Best estimates are that OCWEN has followed this process at least 185,000 times since its inception in June, 2011.

In the within matter, at the very outset, when the plaintiff realized that foreclosure was imminent, he demanded full documentation, including proper assignment with full document trail, deed of trust with full transfer signature trail, and note with full signature trail. Not having these required documents, the foreclosure firm stepped aside, and returned the documents they did have to OCWEN. The defendants then went through a convoluted series of false DOT assignments with varying dates, signed "simultaneously" by individuals on opposite sides of the country, creating a seemingly legal paper trail that falls apart upon close examination, ending with the recordation of the false Substitution of Trustee.

LAW OFFICES OF LINDA ROSE FESSLER
23108 Marguerite Pky #B222
Mission Viejo CA 92692

VERIFIED SECOND AMENDED COMPLAINT FOR DAMAGES

76.    The recordations of the March 19, 2013, Substitution of Trustee on August 28, 2013, and of the July 24, 2013, DOT Assignment 3 on October 22, 2013, were done with malice.

77.    The recordations of the March 19, 2013, Substitution of Trustee on August 28, 2013, and of the July 24, 2013, DOT Assignment 3 on October 22, 2013, were the proximate cause of pecuniary loss or damage to plaintiff in an amount detailed in ¶70. All the defendants, and each of them, conspired together to bring about the sequence of events initiated by the recordations of the March 19, 2013, Substitution of Trustee on August 28, 2013, and of the July 24, 2013, DOT Assignment 3 on October 22, 2013.

## 2.    COUNT II
## VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT
## (12 USC §2601)
## (AS TO OCWEN)

78.    Plaintiff repeats and realleges, and incorporates by reference herein, each and every allegation contained in paragraphs 1 through 77 of this complaint.

79.    OCWEN's home mortgage loans, including the HAMP Agreement loan, are federally regulated mortgage loans as defined in *Real Estate Settlement Procedures Act (hereinafter "RESPA"), 12 U.S.C., §2602.*

80.    The HAMP Agreement between plaintiff and OCWEN is a federally regulated mortgage loan as defined in the *RESPA, 12 U.S.C., §2602.*

81.    The Bureau of Consumer Financial Protection issued a Final Rule on official interpretations on January 18, 2013. In pertinent part it says:

> To the extent a loss mitigation transaction is covered by Regulation B, the transaction is covered by the final rule, including its requirement of providing copies of appraisals and other written valuations.

> Footnote 31 elaborates: The Board determined that certain transactions under the U.S. Department of Treasury's Making Home Affordable Modification Program (HAMP)…did involve applications for extension of credit within the meaning of Regulation B. Guidance issued by the Board prior to the transfer of ECOA rulemaking authority to the Bureau will be applied by the Bureau absent further action.
> (*BUREAU OF CONSUMER FINANCIAL PROTECTION*, 12 CFR Part 1002,

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

[Docket No. CFPB-2012-0032], RIN 3170-AA26, Disclosure and Delivery Requirements for Copies of Appraisals and Other Written Valuations Under the Equal Credit Opportunity Act (Regulation B))

From this Final Rule, it is clear that *RESPA* applies to HAMP loans in the same way it applies to origination loans.

82.   OCWEN violated *RESPA* by failing to provide the disclosures required by *RESPA* in an accurate and timely fashion (*see* ¶¶*46-52*).In particular, OCWEN failed to provide the following required disclosures:

1. Special Information Booklet

2. Initial Escrow Statement

3. Good Faith Estimate of Settlement Costs

4. Servicing Disclosure Statement

5. Affiliated Business Arrangement Disclosure

6. Escrow Account Operation & Disclosures

83.   Plaintiff is informed and believes, and thereon alleges that OCWEN charged him for the preparation of the HUD-1 Settlement Statement (the only disclosure statement he received).

84.   Plaintiff is informed and believes, and thereon alleges that the costs and fees charged were not reasonably related to the services performed by OCWEN. OCWEN has a history of charging excessive fees (*see* ¶¶*25, 27-29*), and the within matter is no different.

85.   The Sixth Circuit has held that Congress intended to create a private cause of action for violation of §2609. (See *Vega v. First Federal Sav. & Loan Assoc.*, 622 F.2d 918, 925, n. 8 (6th Cir. 1980)). Because OCWEN failed to supply the plaintiff with an Initial Escrow Statement or an Escrow Account Operation & Disclosures, and charged the plaintiff more than the amount allowed by §2609, the plaintiff paid unnecessary costs and fees, all in an amount to be proven at trial.

86.   §6 of *RESPA*, defining the requirements for responding to a Qualified

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

Written Request (QWR), contains an express private cause of action (*12 U.S.C. § 2605(f)*). Individual plaintiffs who prevail are entitled to actual damages plus statutory damages of up to $1,000 in cases where there is a pattern or practice of noncompliance (*12 U.S.C. § 2605(f)(1)*). On December 18, 2013, the plaintiff sent OCWEN two QWR letters. On January 7, 2014, OCWEN responded to both letters through counsel. One response was legally responsive to plaintiff's request to observe several original documents. The second response, however, was entirely unresponsive, and stated that further responses would be forthcoming. A third response was written on March 5, 2014, and mailed by overnight courier. It was well beyond the 20-day response time limit. Furthermore, in content it was entirely unresponsive, and did not address in any way most of the plaintiff's requests (*See true and correct copies of plaintiff's QWR letters and OCWEN's responses, attached hereto as Exhibit "M"*).

87.  The defendants clearly have a pattern of noncompliance as evidenced by ¶¶25, 27-29, making the plaintiff eligible for an award of $1,000 in addition to actual damages (*see ¶86*).

88.  Successful plaintiffs are also entitled to an award of attorneys' fees and costs (*12 U.S.C. § 2605(f)(3)*).

89.  As a direct and proximate result of the aforesaid violations, plaintiff paid unnecessary costs and fees, all in an amount to be proven at trial.

## 3.   COUNT III

### VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, §17200 et seq. (ALL DEFENDANTS)

90.  Plaintiff repeats and realleges, and incorporates by reference herein, each and every allegation contained in paragraphs 1 through 89 of this complaint.

91.  The *Unfair Competition Law and Unfair Business Practices Act*, codified in *Business & Professions Code, § 17200 et seq.,* provides that unfair competition shall mean and include any unlawful, unfair or fraudulent business act or

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

1    practice and unfair, deceptive, untrue and misleading advertising.

2    92.    Plaintiff is informed and believes, and thereon alleges that defendants, and

3    each of them, have engaged in unlawful business practices in the State of

4    California within the meaning of *§ 17200* by offering and making "predatory loans"

5    to plaintiff and other borrowers, or by participating in the process of establishing

6    the "predatory loans," followed by actions that ensure the borrower is forced into

7    foreclosure.

8    93.    Plaintiff is informed and believes, and thereon alleges that as soon as

9    possible following execution of the DOT and accompanying Note, the defendants,

10   and each of them, conspired to place the DOT into a securitized mortgage pool,

11   where the DOTs were insured for loss by an umbrella insurance policy mandated

12   by the Pooling and Servicing Agreement. Then the original debtor (the plaintiff in

13   the within matter) would be forced into foreclosure (*see ¶¶46-52*), whereupon the

14   Trustee (HSBC in the within matter) would receive the full value of the Property

15   from the insurance, which would be appropriately distributed between the

16   parties. Then, following the foreclosure procedure, the proceeds of the trustee's

17   sale would also accrue to the parties.

18   94.    The defendants, and each of them, knew or should have known that

19   there was no authority to transfer the beneficiary, trustee, and servicer, and

20   consequently no authority to initiate any default or foreclosure sale.

21   95.    As a direct and proximate result of defendants' manipulations and

22   misrepresentations, plaintiff has suffered damages, including, but not limited

23   to, substantially damaged credit, with his cost of business loans going from 9%

24   to 36%, loss of his business lines-of-credit, the impossibility of obtaining future

25   loans, and the total of the payments made to OCWEN in connection with the

26   HAMP Agreement in amounts to be proven at trial.

27   ///

28   ///

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

### 4.   COUNT IV
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (ALL DEFENDANTS)

96.   Plaintiff repeats and realleges, and incorporates by reference herein, each and every allegation contained in paragraphs 1 through 95 of this complaint.

97.   California law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of California.

98.   OCWEN breached the implied covenant of good faith and fair dealing by, among other things: making unclear, inconspicuous, misleading, and deceptive statements and disclosures to plaintiff; padding the closing costs of the HAMP Agreement loan; and charging excessive, duplicative, and hidden closing costs and fees, as alleged more fully herein.

99.   Plaintiff is informed and believes, and thereon alleges that as soon as possible following execution of the DOT and accompanying Note, the defendants, and each of them, conspired to place the DOT into a securitized mortgage pool, a RMB trust, where the DOTs were insured for loss by a CDS policy mandated by the Pooling and Servicing Agreement. Then the original debtor (the plaintiff in the within matter) would be forced into foreclosure (*see ¶¶46-52*), whereupon the Trustee (HSBC in the within matter) would receive the full value of the Property from the insurance. The CDS owner, through OCWEN,  would buy the Property for a fire-sale value, and then resell it at market value, thus recouping its expenses with a significant "guaranteed" profit (*see Footnote 3*).

100.   The defendants, and each of them, knew or should have known that there was no authority to transfer the beneficiary, trustee, and servicer, and consequently no authority to initiate any default or foreclosure sale.

101.   As a direct and proximate result of defendants' conspiratorial manipulations and misrepresentations, plaintiff has suffered damages, including, but not limited to, substantially damaged credit, with his cost of business loans going from 9% to 36%, loss of his business lines-of-credit, the

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

impossibility of obtaining future loans, approximately $335,000 in lost market value of the Property, the total of the payments made to OCWEN in connection with the HAMP Agreement in amounts to be proven at trial, and his costs for bringing this litigation.

**5.     COUNT V**
**QUIET TITLE**
**[CODE CIV. PROC. §§760.010-764.080]**
**(AS TO OCWEN, HSBC & MERS)**

102.   Plaintiff repeats and realleges, and incorporates by reference herein, each and every allegation contained in paragraphs 1 through 101 of this complaint.

103.   Plaintiff is informed and believes, and therefore alleges that defendants, and each of them, claim some right, title, estate, lien, or interest in and to the Property.

104.   In particular, plaintiff is informed and believes, and thereon alleges that HSBC claims to be the assignee of all beneficial interests under the DOT that give it the right to collect mortgage payments through OCWEN, and to foreclose on the Property through its alleged trustee WESTERN.

105.   Plaintiff is informed and believes, and thereon alleges that HSBC claims to hold the Note to the Property.

106.   Plaintiff alleges that because Assignments 1 and 2 were not recorded and have substantive defects, both OCWEN and HSBC lack the standing and legal or equitable authority to foreclose on the Property on their own or through WESTERN. Furthermore, John Coaster's and Corey Messer's signatures appear to be fraudulent (*see ¶43, ¶44, ¶53, ¶54*), which brings into question the validity of the DOT assignments, whether or not they were recorded.

107.   Plaintiff alleges that because there are no endorsements on the DOT and Note on file with the County Recorder, other than the original signatures, the validity of the chain of title is compromised. Consequently, neither OCWEN nor HSBC have standing with respect to the DOT and Note (*see ¶45*).

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

108.   Plaintiff alleges that, because of the date inconsistencies detailed in ¶61, HSBC was not the Trustee when it substituted its trusteeship to WESTERN (*see ¶¶55-57*). Consequently, MERS is still the Trustee, and any foreclosure-related action taken by, or that will be taken by, WESTERN is invalid.

109.   The plaintiff alleges that OCWEN purchased CDS protection for the subject mortgage, and that it subsequently engineered a "credit event" that triggered payment by the CDS owner. This "credit event" was the forced delinquency described in ¶¶46-52. Consequently, the original mortgage amount was extinguished, and the CDS owner in collusion with OCWEN is now in the process of forcing the Property into a foreclosure sale at a fire-sale price in order to obtain the Property cheaply, and subsequently sell it at market value to produce a profit (*see Footnote 3*).

110.   The consequence of this CDS payment to OCWEN is that the plaintiff does not need to tender the full amount of the mortgage in order to request quiet title.

111.   Plaintiff seeks to quiet title against all claims legal and equitable of defendants, and each of them.

### 6.   COUNT VI
### DECLARATORY RELIEF
### (ALL DEFENDANTS)

112.   Plaintiff repeats and realleges, and incorporates by reference herein, each and every allegation contained in paragraphs 1 through 111 of this complaint.

113.   These disputes concern, but are necessarily limited to, the rights and duties of the parties under the promissory notes between them, the various statutes at issue in this litigation, the ownership to the Property, and/or the right of the defendants, and each of them, to foreclose on the Property.

114.   As these questions concern issues with regard to plaintiff's Property, they are thus required to seek this relief.

115.   OCWEN has initiated foreclosure actions as the agent of HSBC through

1   the agency of WESTERN. On information and belief, the foreclosure currently is
2   on hold, but the defendants can recommence the actions at any time.

3   116.   Plaintiff alleges that a declaration of rights and duties of the parties
4   herein by the Court is essential to determine the actual status and validity of
5   the mortgage loan transaction and any rights, duties, and/or obligations as to
6   the enforcement of it.

7   117.   Plaintiff has exhausted any and all applicable administrative remedies
8   required under the law and for which notice has been provided to plaintiff.

9

10                          **VII.   PRAYER FOR RELIEF**

11   **WHEREFORE**, plaintiff prays for damages and other relief as follows:

12
13   **ON PLAINTIFF'S FIRST CAUSE OF ACTION**
     **SLANDER OF TITLE**

14   1.   Compensatory damages subject to proof at trial;

15   2.   Punitive damages;

16   3.   The plaintiff respectfully requests this court to issue a protective order
17        that will halt or prevent any adverse action relating to the Property or
18        the plaintiff by any defendant herein;

19   4.   Attorney's fees and costs;

20

21
22   **ON PLAINTIFF'S SECOND CAUSE OF ACTION**
     **VIOLATION OF RESPA**

23   1.   Compensatory damages subject to proof at trial;

24   2.   Treble damages;

25   3.   Statutory fine of $10,000.00;

26   4.   Statutory damages of $1,000;

27   5.   Attorney's fees and costs according to statute;

28   ///

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

**ON PLAINTIFF'S THIRD CAUSE OF ACTION**
**BUSINESS & PROFESSIONS CODE §17200 et seq**

1.  Restitution of all interests in money acquired by defendants by means of their unfair competition;

2.  Injunctive relief prohibiting defendants from continuing to perform acts of unfair competition in the State of California;

3.  Attorney's fees and costs;


**ON PLAINTIFF'S FOURTH CAUSE OF ACTION**
**BREACH OF THE IMPLIED COVENANT OF GOOD**
**FAITH AND FAIR DEALING**

1.  Compensatory damages subject to proof at trial;

2.  Punitive damages;

3.  Attorney's fees and costs;


**ON PLAINTIFF'S FIFTH CAUSE OF ACTION**
**QUIET TITLE**

1.  For an order quieting title against all adverse claims in plaintiff's favor;

2.  Attorney's fees and costs;


**ON PLAINTIFF'S SIXTH CAUSE OF ACTION**
**DECLARATORY RELIEF**

1.  Declaratory relief as to the rights and duties of the parties herein;

2.  Attorney's fees and costs;

///
///
///
///
///

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

**ON ALL CAUSES OF ACTION**

1.   That pre-judgment interest be awarded plaintiff as permitted by law;

2.   For a jury trial;

3.   Such other relief as the Court deems just and proper.

DATED: June 5, 2015                    **LAW OFFICES OF LINDA ROSE FESSLER**

*Linda Rose Fessler*

Linda Rose Fessler
Attorney for PAUL J. CROSKREY

VERIFIED SECOND AMENDED COMPLAINT FOR DAMAGES

**VERIFICATION**

I, PAUL J. CROSKREY , am a plaintiff in this action, and am the undersigned in this matter. I have read the foregoing Second Amended Complaint and am informed and believe the matters therein to be true, and on that ground allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 5th day of June, 2015, at Twain Harte, California.

PAUL J. CROSKREY

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

VERIFICATION

**PROOF OF SERVICE**

  I am employed in the county of Orange, State of California.  I am over the age of 18, not a party to the within action, and my business address is 25108 Marguerite Pky #B222 Mission Viejo CA 92692. On 6/5/2015 I served the foregoing documents, described as follows:

**VERIFIED SECOND AMENDED COMPLAINT FOR DAMAGES**

on all interested parties as indicated in the following:

[SEE SERVICE LIST]

| | | |
|---|---|---|
| ☐ | <u>PERSONAL DELIVERY</u> | I caused to be personally delivered ☐ a true copy ☐ the original of the foregoing document(s) to the above address. |
| ☑ | <u>FIRST CLASS MAIL</u> | I placed ☑ a true copy ☐ the original of the foregoing document(s) enclosed in a sealed envelope addressed as indicated, and deposited such envelope in the mail at Laguna Hills, California. The envelope was mailed with postage thereon fully prepaid, as Certified with Return Receipt Requested. |
| ☐ | <u>OVERNIGHT DELIVERY</u> | I placed ☐ a true copy ☐ the original of the foregoing document(s) enclosed in a sealed envelope addressed as indicated, and caused such envelope to be delivered to an employee of, or deposited in an established receptacle of_____ , at Los Angeles, California. The envelope was delivered to the overnight carrier with appropriate fees thereon fully prepared. |
| ☐ | <u>FACSIMILE</u> | I transmitted the foregoing document(s) by facsimile, and upon completion received an acknowledgment from the facsimile machine that the transmission had been successfully completed. |
| ☐ | <u>EMAIL</u> | I transmitted the foregoing document(s) by email, and upon completion received an acknowledgment from the system that the transmission had been successfully completed. |
| ☑ | <u>CM/ECF SYSTEM</u> | Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF systems, which sent notification of that filing to the personal listed above. |
| ☐ | <u>STATE</u> | I declare under penalty of perjury under the laws of the State of California that the above is true and correct. |
| ☑ | <u>FEDERAL</u> | I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made; or that I am a member of the Bar of the United States District Court, Central District of California. |

Executed this 5th day of June, 2015, at Trabuco Canyon, California.

*Linda Rose Fessler*

Linda Rose Fessler

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692

**SERVICE LIST**

Service by CM/ECF System:

> Eric D. Houser
> Marc W. Thomas
> > *mthomas@houser-law.com*
> Linda Rose Fessler     *lindafessler@lindafessler.com,*
> > *lfess69012@aol.com*

Service by First Class Mail:

> Hon David O. Carter
> Ronald Regan Federal Building
> 411 West Fourth Street, Room 9-160
> Santa Ana CA 92701-4516

LAW OFFICES OF LINDA ROSE FESSLER
25108 Marguerite Pky #B222
Mission Viejo CA 92692