JS-6

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| PAUL CROSKREY,<br><br>　　Plaintiff,<br><br><br>　　vs.<br><br>OCWEN LOAN SERVICING LLC, ET AL.,<br><br>　　Defendants. | Case No.: SA CV 14-1318-DOC (DFMx)<br><br><br><br>ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [73] |

Before the Court is Defendants' Motion for Summary Judgment as to the Second Amended Complaint ("Motion") (Dkt. 73). For the foregoing reasons, the Court hereby GRANTS the Motion.

## I.    Facts[1]

### A. Plaintiff's Execution of Deed of Trust and Mortgage Note

On December 7, 2005, Paul Croskrey ("Plaintiff" or "Croskrey") executed a deed of trust ("DOT") and initial mortgage note for a piece of property located at 23520 Middle Camp Road in Tuolumne County, California (the "Property"). Defendants' Statement of Undisputed Facts ("SUF") (Dkt. 68) Nos. 1–2. The lender was Horizon Direct, Inc. ("Horizon"), the trustee was Chicago Title Company ("Chicago"), and the value of the mortgage note was $359,650.00. *Id.* No. 1. Horizon recorded the DOT on December 16, 2016. *Id.* No. 2.

Under the mortgage note, Plaintiff agreed to make 120 payments in the amount of $2,097.86, and thereafter, payments of principal and interest in the amount of $2,788.36 until the maturity of the loan. *Id.* No. 3. The first payment of $2,097.96 was due on February 1, 2006, and the initial interest rate was 7%. *See id.* No. 20; *see also* Second Amended Complaint ("SAC") (Dkt. 36) ¶¶ 34–35.

The DOT signed by Plaintiff states Plaintiff understands and agrees that

> MERS [Mortgage Electronic Registration Systems] holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

SUF No. 40.

---

[1] Unless the Court indicates otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Cross Motions. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court did not rely on the disputed evidence.

**B.  Pooling and Servicing Agreement for HE3 Mortgages and August 2006
Assignment of Plaintiff's Mortgage Note**

On August 30, 2006, a mortgage-backed security instrument, Nomura Home Equity Loan, Inc., Home Equity Loan Trust, Series 2006-HE3 ("HE3") was filed with the Securities and Exchange Commission ("SEC"). *See* SAC Ex. C (Dkt. 36-3). According to Plaintiff, the Pooling and Servicing Agreement for HE3 allegedly contained the following requirement:

> [T]he original Mortgage and the assignment thereof to MERS®, with evidence of recording indicated thereon; or, if the original Mortgage with evidence of recording . . . has been lost . . . , a photocopy of such Mortgage . . . with the recording information thereon certified . . ." and "the originals of any intervening assignments of mortgage with evidence of recording thereon evidencing a complete chain of ownership from the originator of the Mortgage Loan to the last assignee.

*Id.* Ex. D (Dkt. 36-4) at 147.[2] Plaintiff contends that, at some point between December 2005 and August 2005, Plaintiff's DOT was made part of HE3. *Id.* ¶ 42.

On August 29, 2006, MERS, acting as nominee for Horizon, assigned the DOT to HSBC Bank, USA, N.A. ("HSBC"). Plaintiff's Statement of Additional Uncontroverted Material Facts ("SAF") (Dkt. 78) No. 69. However, the signature page of the document, which contains the signature of John Coaster, the vice president of MERS, is dated June 28, 2011. *Id.* Plaintiff contends the DOT "does not include all intervening endorsements showing a complete chain of title from the originator HORIZON . . . to the trustee, HSBC" as required by the Pooling and Servicing Agreement for HE3. *Id.* No. 62. This assignment does not appear to have been recorded, and there is no record in the County Recorder's Officer of such recordation. *Id.* No. 63.

---

[2] At various points, the Court cites to exhibits that were attached to Plaintiff's SAC. At summary judgment, courts "may consider other materials in the record not cited by the parties." *Fosselman v. Dimmer*, Case No. 1:12-cv-01302-DAD-SAB (PC), 2016 WL 2898114, at *1 (E.D. Cal. May 18, 2016) (citations omitted).

### C.   Ocwen Loan Modification & Subsequent Assignment

Ocwen Loan Servicing LLC ("Ocwen") began servicing Plaintiff's loan in April 2006. *Id.* No. 46. As of November 17, 2009, Plaintiff's loan was past due several thousand dollars.[3] Ocwen contacted Plaintiff on December 16, 2009 and sent a Home Affordable Modification Program ("HAMP") application by email on December 22, 2009. SUF No. 7. Plaintiff completed the application and returned it to Ocwen in November 2010. *Id.* No. 8. In the HAMP Application, Plaintiff declared under penalty of perjury the following: "I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future." Declaration of Kevin Flannigan ("Flannigan Decl.") (Dkt. 69) Ex. G at 1. Plaintiff does not dispute he signed the HAMP agreement. Rather, Plaintiff states in his declaration accompanying this Motion:

> I told the Ocwen rep that I was not having financial difficulties, but that Ocwen had approached me a year earlier, proposing that I do a HAMP refinance, since it would serve my interests without negatively impacting me. Basically, I was told to ignore the wording contained in the HAMP application, and just sign it so that I could go through the TPP [Trial Period Plan] and qualify for the HAMP loan.

Declaration of Paul Croskrey ("Croskrey Decl.") (Dkt. 76) ¶ 5.

On December 13, 2010, Plaintiff sent an email to an Ocwen representative. In that email, Plaintiff explained his financial difficulties: "My fully amortized payment is $2,787.20 currently under the contract my optional paymant [sic] is $2097 .. [sic] Taking my income of $5633[, my] DTI [debt-to-income ratio] is 37% not 29%. Using thje [sic] fully amortised [sic] payment amount I am at 58% DTI." SAC Ex. F (Dkt. 36-6) at 1. Plaintiff also noted that his monthly payment was going to increase. *Id.* Near the end of his email, Plaintiff stated, [i]f I do

---

[3] Defendants contend Plaintiff's loan was past due $5,825.12, *see* SUF No. 5; Plaintiff contends the loan was past due $4,707.96, *see* Statement of Genuine Disputes of Material Facts ("SDF") (Dkt. 77) No. 5.

not hear from you with a new payment option by the end of this month December 2010[,] I will not make anymore [sic] payments to Ocwen unitl [sic] you do." *Id.* at 2.[4]

On December 16, 2010, Ocwen approved Plaintiff's HAMP modification, and Ocwen sent Plaintiff a HAMP Trial Period Plan ("TPP") on December 16, 2010, "which recited that by making the first trial payment, Plaintiff agreed that his current Loan documents remain in full force and effect, but that Plaintiff may make the trial period payment instead of the payment required under his Loan documents." SUF No. 9. On February 17, 2011, Ocwen sent Plaintiff the final HAMP modification agreement for his review. *Id.* No. 13. On March 29, 2011, Plaintiff wrote to an Ocwen representative, "It is in your court now[;] provide me with a loan modification that does not lead to foreclosure or meet me in court. Its [sic] time for you to man up and get the job done right." SAC Ex. F at 8.

Subsequently, on April 13, 2011, Plaintiff executed the HAMP modification agreement and the balloon disclosure agreement. *Id.* SUF No. 15. The modified principal balance of the note following the implementation of the HAMP modification was $372,621.56, to be paid off at $1,499.83 per month. *Id.* Nos. 16, 19. As a result of the HAMP modification, Plaintiff's loan payment was lowered to $1,499.83, and the interest rate was lowered to 2% *Id.* Nos. 19–20. After Plaintiff executed the HAMP agreement, Ocwen waived $4,707.96 in late charges. *Id.* No. 17.

Plaintiff made three separate payments on January 31, 2011, March 3, 2011, and April 4, 2011 as part of the TPP program. *Id.* No. 14. Those payments were credited towards Plaintiff's December 2010 and January 2011 payments. *Id.*[5]

---

[4] The Court notes Defendants cite to Exhibit F, which was attached to Plaintiff's SAC. *See, e.g.*, SUF No. 6. Though the email exchange is not included as one of the exhibits in support of Defendants' Motion, the Court again notes it "may consider other materials in the record not cited by the parties." *Fosselman*, 2016 WL 2898114, at *1 (E.D. Cal. May 18, 2016) (citations omitted). Plaintiff not only attached the email exchange as part of the SAC, which he signed under penalty of perjury, but also acknowledges the email exchange in the Statement of Genuine Disputes of Material Facts. *See* SDF No. 6. For these reasons, the Court finds it appropriate to consider the exhibits attached to Plaintiff's SAC.

[5] In December 2010, Plaintiff's loan was escrowed for the payment of taxes and insurance, with an initial monthly escrow payment amount beginning with the December 1, 2010 loan payment of $246.17. SUF No. 10. Thus, Plaintiff's loan payment for December equaled $2,344.13, representing the usual monthly payment of $2,097.96 plus the escrow payment of $246.17. *Id.* No. 11.

Plaintiff stopped making payments on the modified loan beginning with the December 2012 payment, and has not made any payments since. *Id.* No. 24. The current loan principal balance is $353,281.85. *Id.* No. 25.

In his declaration, Plaintiff states he signed the Hamp agreement "under duress, in that the Ocwen rep told I was in default, and Ocwen would immediately commence foreclosure procedures unless I signed them." Croskrey Decl. ¶ 11. Croskrey also states that he told an Ocwen representative "that I was not having financial difficulties" and adds that an Ocwen representative "told me that if I successfully completed my TPP, the fact that I was not concurrently making my mortgage payments would not count against me." *Id.* ¶ 6.

On March 13, 2013, MERS, again acting as nominee for Horizon, assigned the DOT to HSBC. *Id.* No. 27. This assignment was also not recorded. *Id.* On the same date, Ocwen as attorney-in-fact for HSBC, executed a Substitution of Trustee that substituted Western Progressive ("Western") as the trustee under the DOT. *Id.* No. 29. On July 24, 2013, MERS assigned the DOT to HSBC a third time. *Id.* No. 30. This assignment was recorded on October 22, 2013. *Id.*

### D. Procedural History

Plaintiff filed suit in this Court against Ocwen, HSBC, MERS, and Western (collectively "Defendants"), as well as Horizon and Chicago on August 18, 2014. Complaint (Dkt. 1). On September 3, 2014, he filed a First Amended Complaint ("FAC") (Dkt. 11) dropping his claims against Horizon and Chicago. On May 22, 2015, the Court issued an order granting in part Defendants' Motion to Dismiss. Order, May 22, 2015 ("May 22, 2015 Order") (Dkt. 35). In the May 22, 2015 Order, the Court dismissed Plaintiff's Truth in Lending Act ("TILA") claim and fraud claims against Defendants with prejudice; dismissed Plaintiff's slander of title claims, Real Estate Settlement Procedures Act ("RESPA") claim, breach of implied covenant of good faith and fair dealing claims (to the extent they were brought on a tort theory), quiet title claim, and declaratory relief claims without prejudice; and denied the Motion to Dismiss as to Plaintiff's Unfair Competition Law ("UCL") and implied covenant of good faith and fair dealing claims (to the extent they were brought on a contract theory). May 22, 2015 Order at 23.

Plaintiff filed the operative complaint – the SAC – on June 5, 2015. In the SAC, Plaintiff asserts the following claims: (1) slander of title, (2) violation of RESPA, (3) violation of the UCL, (4) breach of the implied covenant of good faith and fair dealing, (5) quiet title, and (6) declaratory relief. *See generally* SAC. Plaintiff brings this first, third, fourth, and sixth claims against all Defendants. *See id.* Plaintiff brings the RESPA claim against Defendant Ocwen; and Plaintiff brings the quiet title claim against Defendants Ocwen, HSBC, and MERS. *See id.*

Defendants filed the instant Motion on April 27, 2016 (Dkt. 73).[6] Plaintiff opposed on May 2, 2016 (Dkt. 74), and Defendants replied on May 9, 2016 (Dkt. 84). The Court held a hearing on the Motion on May 27, 2016. Minutes of Motion (Dkt. 102).

## II.    Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-

---

[6] The Court notes Defendants originally filed their Motion for Summary Judgment on April 25, 2016 (Dkt. 66). However, because that filing did not comply with the Local Rules concerning font size, the Court struck it and directed Defendants to file a corrected version. Defendants complied with that order by filing the Motion at issue here (Dkt. 73). Plaintiff argues Defendant's Motion is untimely and urges the Court to deny the Motion on that basis. Opp'n at 6. The Court declines to take such a drastic action, however, especially considering Defendants originally filed a Motion for Summary Judgment on April 25, 2016.

49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### III.    Discussion

Defendants first contend that Plaintiff lacks standing to challenge the assignments of his loan because he was not a party to those assignments. Defendants also seek judgment on all of Plaintiff's remaining claims: (1) slander of title, (2) violation of RESPA, (3) violation of UCL, (4) breach of the implied covenant of good faith and fair dealing, (5) quiet title, and (6) declaratory relief.

In response, Plaintiff contends he does have standing to challenge the various assignments. He adds he has not had enough time to conduct discovery in this case. The Court will begin by analyzing the threshold issue of whether Plaintiff should be afforded additional time to complete additional discovery.

#### A.  Discovery Issues

As an initial matter, Plaintiff argues he did not have adequate time for discovery. Mot. at 6–8. Specifically, Plaintiff argues the "matter is not yet ready for Summary Judgment, since the Plaintiff has not had the opportunity to discover information that is essential to his opposition." *Id.* at 8 (citation and internal quotation marks omitted). The Court finds this argument unconvincing for several reasons. First, and most importantly, Plaintiff has not complied with Rule 56(d). Under Rule 56(d), a "trial court may order a continuance on a motion for summary judgment if the party requesting a continuance submits affidavits showing that, without Rule 56

assistance, it cannot present facts necessary to justify its claims." *Family Homes and Fin. Ctr., Inc. v. Federal Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The requesting party must specifically show "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Id.* (citation omitted). Here, Plaintiff's counsel submits a declaration in connection with the Opposition. *See* Declaration of Linda Rose Fessler ("Fessler Decl.") (Dkt. 80). However, this declaration does not comply with any of the Rule 56(d) requirements; thus, the Court declines to permit additional discovery at this late stage. *See Family Homes and Fin. Ctr., Inc.*, 525 F.3d at 827 ("Failure to comply with these requirements is a proper ground for denying discovery and proceeding to summary judgment.") (citation and internal quotation marks omitted). Second, the parties waited until April 18, 2016 – the date by which all discovery was to be completed – to file a joint Motion to Compel (Dkt. 62). Plaintiff provides no explanation for this lack of diligence. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 912 (9th Cir. 1997) (noting failure to diligently pursue discovery is sufficient reason to deny further discovery). The Court also notes neither party moved to modify the scheduling order pursuant to Rule 16(b) to engage in discovery past the cut-off date.

Third, the Magistrate Judge has already ruled on the Motion to Compel on May 17, 2016. Magistrate Judge Order, May 17, 2016 ("May 17, 2016 Order") (Dkt. 92). In the May 17, 2016 Order, the Magistrate Judge denied the vast majority of the relief sought, and sanctioned Plaintiff because "most of Plaintiff's requests sought information or production of records plainly not relevant to the claims alleged in the Second Amended Complaint." May 17, 2016 Order at 8. Additionally, Plaintiff has not updated the Court – either in writing or at the hearing on May 27, 2016 – as to whether he is still seeking additional discovery.

For these reasons, the Court will proceed to consider the merits of the parties' arguments based on the evidence presently in the record. The Court notes the only evidence submitted in connection with the Opposition is a declaration from Plaintiff (Dkt. 76).[7]

---

[7] The Court acknowledges Plaintiff's counsel has also submitted a declaration (Dkt. 80)

**B. Standing**

The parties spend a great deal of effort disputing whether Plaintiff has standing to challenge the validity of an assignment to which he was not a party – an issue that undergirds many of Plaintiff's claims.[8] Throughout the litigation, Plaintiff has challenged the series of assignments of his loan.[9] Plaintiff, relying heavily on the California Supreme Court's recent decision in *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016), argues he has standing because he "is asserting [his] own interest in limiting foreclosure on [his] property to those with legal authority to order a foreclosure sale." Opp'n at 16. For their part, Defendants argue "*Yvanova* does not disturb the general rule that a non-party to an assignment lacks standing to bring claims based on a voidable (rather than void) assignment." Mot. at 5–6 (citation omitted).

The Court agrees with Defendants on this issue. It is well-established that a "borrower does not have standing to challenge defects in trust assignments that are merely voidable." *Hard v. Bank of New York Mellon*, No. 2:14-cv-01948-TLN-CMK, 2016 WL 2593911, at *12 (E.D. Cal. May 5, 2016) (citations omitted). This point was confirmed in *Yvanova*, in which the California Supreme Court stated,

> When an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes step to make it so. A borrower who challenges a foreclosure on the ground that an assignment to the foreclosing party bore defects rendering it voidable could thus be said to assert an interest belonging solely to the parties to the assignment rather than to herself.

*Yvanova*, 62 Cal. 4th at 936 (emphasis added).

---

[8] Defendant contend this issue is central to "all causes of action except the RESPA claim." Mot. at 4.

[9] For example, at the motion to dismiss stage, Plaintiff argued HSBC (and therefore Ocwen, its agent) had no authority to appoint Western as trustee, since Horizon (through MERS) had not properly assigned the deed of trust to HSBC. *See* May 22, 2015 Order at 16.

Thus, the operative question is whether the assignment at issue is void or voidable. In his Opposition, Plaintiff does not clearly articulate his challenges to the assignments. Plaintiff appears to argue the August 2006 assignment from MERS to HSBC is invalid did not conform with the "Pooling and Servicing Agreement, bringing into question the validity of the chain of title, and raising the question of whether OCWEN and HSBC have standing with respect to the DOT and Note, and even whether the DOT is legally part of HE3." Opp'n at 19 (citing SAC ¶ 45). Plaintiff provides no authority to suggest his challenges to the assignments would render them void, as opposed to merely voidable. Indeed, the existing authority on this suggests the opposite. For example, in *Hard v. Bank of New York Mellon*, a district court in this Circuit recently wrote:

> Here, Plaintiff alleges that pursuant to New York law, the assignment of his Deed of Trust to Defendants was void, because Defendants received the assignment beyond the 90 day period of its closing date. (ECF No. 21 at ¶ 87.) However, because "an act in violation of a trust is voidable—not void—under New York law," which allegedly governs the pooling and servicing agreement at issue in this case, Plaintiff lacks standing. *Morgan*, No. 14–55203, at *2; *see also Rajamin v. Deutsche Bank Nat. Trust Co.,* 757 F.3d 79, 87–90 (2d Cir. 2014) (finding that generally New York authority finds that "any failure to comply with the terms" of the pooling servicing agreements does not render the "acquisition of plaintiffs' loans and mortgages void" because "[u]nder New York law, unauthorized acts by trustees are generally subject to ratification by the trust beneficiaries").

*Hard*, 2016 WL 2593911, at *12; *see also Morgan v. Aurora Loan Servs., LLC*, No. 14-55203 (9th Cir. Mar. 28, 2016), 2016 WL 1179733, at *2 ("But because an act in violation of a trust agreement is voidable—not void—under New York law, which governs the Pooling and Servicing Agreement (PSA) at issue, Morgan lacks standing here.") (citation omitted).

The same logic applies here. Plaintiff contends the transfers were void on the grounds the parties did not follow the required procedures contained in the Pooling and Servicing

Agreement, Opp'n at 13; however, Plaintiff has not pointed the Court to any authority suggesting these alleged defects render the assignments void. Further, "to the extent [Plaintiffs] allege[] defects to MERS's role in the securitization process, 'California [courts] have universally held that MERS, as nominee beneficiary, has the power to assign its interest under a deed of trust." *Morgan*, 2016 WL 1179733, at *2 (quoting *Herrera v. Fed. Nat'l Mortg. Ass'n*, 141 Cal. Rptr. 3d 326, 338 (Ct. App. 2012)); *Bever. Cal-Western Reconveyance Corp*., No. 1:11-CV-1584 AWI SKO, 2013 WL 5492154, at *3 (E.D. Cal. Oct. 2, 2013) ("California courts recognize that MERS as a nominee and beneficiary under a deed of trust has the authority to assign its interest in the deed of trust and that such an assignment is valid.") (citations omitted).

Based on the foregoing, the Court concludes Plaintiff has not established he has standing to challenge the validity of the assignments at issue. Thus, to the extent Plaintiff's claims rely on challenges to the validity of the assignments, the Court finds Plaintiff's claims fail as a matter of law. As stated above, Defendant notes this issue relates to "all [of Plaintiff's] causes of action except the RESPA claim." Mot. at 4. Nonetheless, the Court will still proceed to specifically examine the merits of Plaintiff's six specific claims.

### C. Slander of Title Claim

Plaintiff's first cause of action – slander of title – asserts the "recordations of the March 19, 2013, Substitution of Trustee on August 28, 2013, and of the July 24, 2013, DOT Assignment 3 on October 22, 2013, were the proximate cause of pecuniary loss or damage to plaintiff." SAC ¶ 77. Defendant seeks judgment on Plaintiff's slander of title claim, "as Plaintiff's assertions are premised on the assignment of other entities' rights under the Loan, conduct which was specifically consented to by Plaintiff, and which did not alter any of his obligations under the Loan." Mot. at 8.

"Slander or disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes the owner thereof some special pecuniary loss or damage." *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030 (2012) (internal quotation marks omitted). The elements of

slander of title are: "(1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss." *Id.* A publication disparages a person's interest in land "[i]f the publication is reasonably understood to cast doubt upon the existence or extent of another's interest in land." *Id.* Pecuniary loss is an essential element of a slander of title claim. The pecuniary loss that can be recovered is restricted to "(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and [¶] (b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement." *Id.* (alteration in original) (emphasis removed).

In the May 22, 2015 Order, the Court dismissed this claim, writing,

> These allegations do not adequately state a slander of title claim. Plaintiff has not adequately alleged that Defendants published anything that disparaged Plaintiff's interest in the Property. A notice that a lender has substituted one trustee for another cannot be "reasonably understood to cast doubt upon the existence or extent of [Plaintiff's] interest in land.

May 22, 2015 Order at 14. Plaintiff has not remedied this fundamental defect – that is, Plaintiff has not explained how any of the publications cast any doubt on *his* interest in the Property. Further, as noted above, Plaintiff has not established standing to challenge the assignments at issue in this case.

Defendants also argue Plaintiff has not demonstrated that he directly and immediately suffered pecuniary loss due to the recordation of the title instruments. Mot. at 10. Plaintiff offers no evidence in response – rather, he simply points to the allegations in the SAC. *See* Opp'n at 21. This is inadequate at the summary judgment stage. *See Lawther v. OneWest Bank, FSB*, No. C-10-00054 JCS, 2012 WL 298110, at *12 ("Plaintiff provides *no* evidence to support any of these conclusory statements of loss. These statements, without more, are insufficient to show specific facts that present a genuine issue for trial.").

Accordingly, the Court GRANTS summary judgment in Defendants' favor as to the slander of title claim.

### D. RESPA Claim

Defendants next seek summary judgment on Plaintiff's RESPA claim. This claim consists of two distinct parts: (1) Plaintiff alleges Defendants violated RESPA in connection with the HAMP agreement, and (2) Plaintiff allege Defendants violated RESPA in not adequately responding to Plaintiff's Qualified Written Request ("QWR"). The Court will consider these two arguments separately.

### 1.    HAMP Agreement

Defendants argue the HAMP agreement is a loan modification, not a "federally related mortgage loan" within the meaning of RESPA, and therefore, RESPA's disclosure provisions do not apply. *See* Mot. at 10. RESPA applies to "federally related mortgage loans." A "federally related mortgage loan" is defined as any loan which

> (A)    is secured by a first or subordinate lien on residential real property (including individual units of condominiums and cooperatives) designed principally for the occupancy of from one to four families, including any such secured loan, the proceeds of which are used to prepay or pay off an existing loan secured by the same property; and

> (B)    (i) is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government, or

> (ii) is made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by the Secretary or any other officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary or a housing or related program administered by any other such officer or agency; or

> (iii) is intended to be sold by the originating lender to the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, or a financial institution from

which it is to be purchased by the Federal Home Loan Mortgage
Corporation; or

(iv) is made in whole or in part by any "creditor", as defined in section
1602(f) of Title 15, who makes or invests in residential real estate loans
aggregating more than $1,000,000 per year, except that for the purpose of
this chapter, the term "creditor" does not include any agency or
instrumentality of any State;

12 U.S.C. § 2602(1); *see also* 12 C.F.R. § 1024.2(b).

In the May 22, 2015 Order, the Court dismissed Plaintiff's RESPA claim as to the HAMP agreement because the HAMP agreement "appears to be a modification of Plaintiff's original mortgage note and deed of trust. Plaintiff does not allege that Ocwen or the other Defendants lent him any additional money as a result of the HAMP agreement." May 22, 2015 Order at 18.

Plaintiff has not remedied this fundamental defect, and thus, the Court concludes the claim again fails for the same reason. Indeed, Plaintiff provides the Court with no convincing authority to suggest the RESPA disclosure provisions apply to Plaintiff's HAMP agreement. In discussing whether RESPA applies to the HAMP agreement, Plaintiff confusingly cites a rule issued by the Consumer Financial Protection Bureau. *See* Opp'n at 21; *see also* SAC ¶ 81. Plaintiff, however, fails to provide any explanation of how this rule makes RESPA applicable to his HAMP agreement. *See* Opp'n at 21. And, in any event, the rule took effect in January 2014 – nearly three years after Plaintiff executed the HAMP agreement. *See* Reply at 13–14. Thus, the Court has not basis for concluding the rule should apply to Plaintiff's HAMP agreement. Because there is no evidence (or even indication that) the HAMP agreement was a new loan, the Court finds no basis for applying RESPA's disclosures provisions to the HAMP agreement.

But even if the HAMP agreement was a new loan, Plaintiff has not established he has a private right of action to pursue his RESPA claim. The only specific section of RESPA that

Plaintiff references in the SAC is § 2609. *See* SAC ¶ 85.[10] However, "[w]hile a lender who

violates 12 U.S.C. § 2609 is subject to imposition of penalties by the Secretary of Housing and

Urban Development, there is no private right of action under 12 U.S.C. § 2609." *Schneider v.*

*Bank of America, N.A.*, No. 2:11-cv-2953 LKK DAD PS, 2012 WL 761975, at *6 (E.D. Cal.

Mar. 6, 2012) (citations omitted); *see id.* (collecting cases concluding there is no private right of

action under 12 U.S.C. § 2609). Plaintiff's reliance on an out-of-circuit case – *Vega v. First*

*Fed. Sav. & Loan Ass'n of Detroit*, 622 F.2d 918 (6th Cir. 1980) – is unconvincing. *See* Opp'n

at 22.

### 2.   Qualified Written Request

Separately, Plaintiff contends Ocwen violated RESPA in not adequately responding to

Plaintiff's Qualified Written Request ("QWR"). Opp'n at 22. Plaintiff specifically alleges

Ocwen violated 12 U.S.C. § 2605(e). In relevant part, § 2605(e) states:

> (1) Notice of receipt of inquiry
>
> (A) In general. If any servicer of a federally related mortgage loan receives
>
> a qualified written request from the borrower (or an agent of the borrower)
>
> for information relating to the servicing of such loan, the servicer shall
>
> provide a written response acknowledging receipt of the correspondence
>
> within 20 days . . . unless the action requested is taken within such period.

---

[10] The Court notes Plaintiff appears to allege a number of other RESPA violations in the SAC, without referencing specific sections of RESPA or even mentioning these violations in his Opposition. *See* SAC ¶ 82; Opp'n at 22. Out of an abundance of caution, the Court will briefly address these alleged violations. In referencing the failure to disclose a "Special Information Booklet" and "Good Faith Estimate of Settlement Costs," Plaintiff appears to be referencing 12 U.S.C. § 2604. However, the Court finds there is no private right of action under § 2604. *See Palestini v. Homecomings Fin., LLC*, 2010 WL 3339459, at *4 (S.D. Cal. Aug. 23, 2010) (finding no private right of action under 12 U.S.C. § 2604). Similarly, the Court finds the failure to disclose an "Affiliated Business Arrangement Disclosure" is not actionable. *See Washington v. Nat'l Mortg. Co.*, No. C 10-5042 SBA, 2011 WL 1842836, at *8 (N.D. Cal. May 16, 2011) (failure to comport with disclosure requirements of an affiliated business arrangement was not actionable). Finally, even if Ocwen had an obligation to provide a Servicing Disclosure Statement, Plaintiff did not bring this claim within 3 years statute of limitations; the HAMP agreement was executed on April 13, 2011, and this action was not commenced until August 18, 2014. Thus, a claim that Ocwen failed to provide a Servicing Disclosure Statement appears to be time barred. *See Westfall v. Mortg. Electronic Registration Systems, Inc.*, Case No. 3:15-cv—01403-L-NLS, 2016 WL 1241520, at *2 (S.D. Cal. Mar. 30, 2016) (noting claims brought under § 2605 are subject to a three year statute of limitations).

(B) Qualified written request. For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

According to Plaintiff, Ocwen violated § 2605 by not adequately responding to a letter he sent dated December 18, 2013. *See* Opp'n at 22. In that letter, Plaintiff wrote, "[d]ue to serious deficiencies found in ongoing securitization audit of the alleged note and security instrument regarding chain of title, RESPA and Truth in lending violations I hereby request information about the fees, costs, and escrow accounting of my loan for independent verification." Flannigan Decl. Ex. L at 1. Plaintiff argue Ocwen violated RESPA by not providing an adequate response to this inquiry.

In its Motion, Ocwen argues Plaintiff's December 18, 2013 letter does not qualify as a QWR under 12 U.S.C. § 2605. Mot. at 14. Under § 2605(e), a loan servicer has only has obligation to act when it receives a QWR from the borrower or borrower's agent "for information relating to the servicing of [the] loan." 12 U.S.C. § 2605(e)(1)(A). As defined in RESPA, servicing "means receiving any scheduled periodic payments from a borrower . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." *Id.* § 2605(i)(3).

Here, the Court finds that Plaintiff's December 18, 2013 letter does not qualify as a QWR. In *Medrano v. Flagstar Bank, FSB*, the Ninth Circuit held that "letters challenging only a loan's validity or its term are not qualified written requests that give rise to a duty to respond under § 2605(e)." 704 F.3d 661, 667 (9th Cir. 2012); *see also Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d at 1002, 1014 (N.D. Cal. 2009) (noting the letter "simply disputed the validity of the loan and not its servicing," and thus dismissing plaintiff's RESPA claim); *Dang*

*v. Residential Credit Solutions*, Case No. C-14-02587-RMW, 2014 WL 5513753, at *8 (N.D. Cal. Oct. 31, 2014) ("The letters requested verification of the proof of claim and disputed the validity of the debt, so defendants were not required to respond.") (citation omitted); *Nan Hui Chen v. Deutsch Bank Nat'l Trust Co.*, Case No.: 13-CV-3352-YGR, 2014 WL 2738071, at *11 ("Plaintiff alleges that she disputed the alleged default and requested a full accounting regarding fees, costs, and escrow accounting, but does not allege that she stated her reasons for the relief that the account was in error or provide insight on what those reasons might be. Accordingly, this claim is dismissed[.]").

Looking to Plaintiff's December 18, 2013 letter in this case, the Court finds the letter largely disputes the validity of the loan – specifically, the "deficiencies in the ongoing securitization audit of the alleged note and security instrument regarding chain of title." Additionally, Plaintiff does not point the Court to any specific "servicing errors." *Phillips v. Bank of Am. Corp.*, No. C 10-0400 JF (HRL), 2010 WL 1460824, at *4 (N.D. Cal. Apr. 9, 2010); *see also Pendelton v. Wells Fargo Bank, N.A.*, 993 F. Supp. 2d 1150, 1152 (C.D. Cal. 2013).

The Court also notes the breadth of Plaintiff's requests. *See* Flannigan Decl. Ex. L at 1 (requesting "information about the fees, costs, and escrow accounting of my loan for independent verification"). Indeed, Plaintiff's letter makes a number of "discovery-style document demands and interrogatories." *Watts v. Fed. Home Loan Mortg. Corp.*, Civ. No. 12-692 (SRN/JSM), 2012 WL 6928124, at *10 (D. Minn. Oct. 30, 2010). In fact, Plaintiff's letter even explicitly references the Rule 26 discovery standard. *See* Flannigan Decl. Ex. L at 1–2; *see id.* at 2 ("Withholding any information requested will be deemed an attempt to defraud and hamper the discovery process."). "Given the breadth of plaintiffs' putative QWR," it does appear that some of the requests of information may have touched on servicing practices; "but in the court's opinion, it cannot fairly be said that the letter sought information relating to the servicing of plaintiffs' loan." *Hopson v. Chase Home Fin. LLC*, 14 F. Supp. 3d 774, 787 (S.D. Miss. 2014). Instead, it appears Croskrey "principally demanded information to facilitate an 'audit' of plaintiffs' account so that their analysts could evaluate the validity of the debt and

determine the identity of the owners of plaintiffs' note." *Id.*; *see* Flannigan Decl. Ex. L at 2 ("Specifically we are disputing (a) the identity of a true secured lender/creditor, and (b) the existence of debt, and (c) your authority and capacity to collect on behalf of the alleged lender/creditor/owner in due course.").

For the above reasons, the Court finds the letter does not constitute a QWR under § 2605, and thus, Plaintiff's RESPA claim fails. *See Medrano v. Flagstar Bank, FSB*, 704 F.3d at 667; *see also Consumer Solutions REO, LLC*, 658 F. Supp. 2d at 1014.

The Court notes Plaintiff fails to address in its Opposition why the December 18, 2013 letter constitutes a AWR. *See* Opp'n at 22; *see also Alvardo v. FedEx Corp.*, No. C 04-00098 SI, 2006 WL 644875, at *11 (N.D. Cal. Mar. 13, 2006) ("It is not the role of the Court to advance arguments on behalf of plaintiff, or to comb through the voluminous record searching for evidence in support these claims."). Indeed, instead of arguing the letter related to the servicing of the loan in any way, Plaintiff argues he simply "understood his letter to Ocwen to be a QWR." *Id.* However, the fact Plaintiff understood the letter as a QWR does not necessarily make it so.

Even more, Defendant did respond to Plaintiff's December 18, 2013 letter. *See* Declaration of Amy Starrett ("Starrett Decl.") (Dkt. 70) Ex. 3 at 1–2.[11] Plaintiff offers no meaningful response to this fact. *See* Opp'n at 22.

Accordingly, for the reasons discussed above, Plaintiff's RESPA claim as to the December 18, 2013 letter fails.

### 3.   Damages

Plaintiff's RESPA claim suffers from one final defect. Even assuming the HAMP agreement was a new loan or if the December 18, 2013 letter constituted a QWR, he has not produced adequate evidence of any resulting damages. In addition to showing a breach of

---

[11] The Court notes that while the letter was dated December 18, 2013, it was mailed by Plaintiff on December 30, 2013. *See* Flannigan Decl. Ex. L at 5. Ocwen acknowledged receipt on January 7, 2014, which was within the required 20-day period. *See* 12 U.S.C. § 2605(e)(1)(A). *See* Starrett Decl. Ex. 2. Ocwen then provided a substantive response on March 5, 2014. *See id.* Ex. 3. Excluding weekends and holidays (as directed by the statue) the response was within the 60-day period provided by RESPA at the time. "Therefore, based on the undisputed evidence, Owen's response to Plaintiff's [letter] was timely and Plaintiff's claim that Ocwen violated RESPA fails as a matter of law." *Hacker v. Deutsche Bank Nat. Trust Co.*, No. SACV 12-1017-DOC (ANx), 2015 WL 685595, at *4 (C.D. Cal. Feb. 17, 2015). Plaintiff provides no meaningful argument that Defendant's response was not adequate.

RESPA, plaintiffs "must, at a minimum, also prove that the breach resulted in actual damages or was part of a pattern or practice of noncompliance." *Lawther*, 2012 WL 298110, at *14 (citing 12 U.S.C. § 2605(f)(1)(A)). Here, Defendants contend "Plaintiff did not offer any admissible showing" any damages that resulted from the claimed RESPA violations. *See* Reply at 8. The Court agrees. Plaintiff has pointed the Court to no evidence that the alleged RESPA violations resulted in any actual damages. *See* Opp'n at 22. Thus, Plaintiff's claim fails for this reason. *See Colbert v. Sage Point Lender Servs., LLC*, No. 1:14-cv-01626-LJO-JLT, 2014 WL 7409291, at *6 (E.D. Cal. Dec. 30, 2014) (dismissing RESPA claim because Plaintiff failed to allege any pecuniary damages resulting from defendants' failure to respond to any inquiries).

Plaintiff does contend he is eligible for a statutory damages award of $1,000 for Ocwen's pattern of noncompliance with RESPA. Opp'n at 22 (citing SAC ¶ 87). Plaintiff appears to argue there is a pattern of noncompliance because Ocwen entered into consent judgments in three separate lawsuits unrelated to this case. Opp'n at 22; *see also* SAC ¶¶ 25–27. Plaintiff simply cites these cases in the SAC, but does not provide the Court with an adequate explanation of those cases. *See* SAC ¶¶ 25–27. Plaintiff provides the Court with no authority or evidence (1) suggesting these other lawsuits actually concerned Ocwen's pattern of noncompliance with RESPA, and even if they did, (2) that Plaintiff can use consent judgments in other lawsuits to establish Ocwen's pattern of noncompliance with RESPA in this case. Indeed, Plaintiff does not even sufficiently provide the Court with facts from these other cases. *See* SAC ¶¶ 25–27; *see also Evans v. Nationstar Mortg., LLC*, No. 2:15-cv-1213 JAM GGH PS, 2015 WL 6756255, at *8 n.4 (E.D. Cal. Nov. 5, 2015) ("Plaintiff alleges that defendant has engaged in a pattern or practice of nompliance in other cases; however, plaintiff includes no facts other than this bare legal conclusion and case citations and summaries. Such an allegation does not meet the Rule 12(b)(6) pleading standard.").

Thus, Plaintiff has provided the Court with no basis for finding a pattern or practice of noncompliance. *See Lawther*, 2012 WL 298110, at *17. Rather, Plaintiff asks the Court to presume [Ocwen] has engaged in the same non-responsive behavior with other borrowers." *Lawther*, 2012 WL 298110, at *17.

For all these reasons, Plaintiff's RESPA claim fails as a matter of law. Accordingly, the Court GRANTS summary judgment in Defendants' favor as to the RESPA claim.

### E.  UCL Claim

Next, Defendants seek summary judgment on Plaintiff's UCL claim. Defendants contend "Plaintiff cannot allege a valid claim for relief because (1) he has not suffered an economic injury which was the result of an unfair business practice, and (2) he cannot show any unfair, unlawful, or fraudulent business practice." Mot. at 15. In response, Plaintiff first argues he does adequately allege economic injury, pointing to a single allegation in the SAC:

> As a direct and proximate result of defendants' manipulations and misrepresentations, plaintiff has suffered damages, including, but not limited to, substantially damaged credit, with his cost of business loans going from 9% to 36%, loss of his business lines-of-credit, the impossibility of obtaining future loans, and the total of the payments made to Ocwen in connection with the Hamp Agreement in amounts to be proven at trial.

Opp'n at 23 (citing SAC ¶ 95).

Under the UCL, plaintiffs must aver facts establishing they "suffered injury in fact and have lost money or property as a result of the unfair competition." Cal. Bus & Prof. Code §§ 17204, 17536; *Henderson v. Gruma Corp*., Case No. 10-cv-04173-AHM, 2011 WL 1362188 at *3 (C.D. Cal. Apr. 11, 2011) ("To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e. economic injury, and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising  that is the gravamen of the claim. The first is an injury-in-fact requirement, and the second is a causation requirement.") (citation and internal quotation marks omitted)

Here, Plaintiff relies solely on this single allegation, *see* Opp'n at 23 (citing SAC ¶ 95); he has not pointed the Court to *any* evidence in his Opposition to support his alleged damages. *See id.* While this single allegation was sufficient to survive the pleading stage, *see* May 22,

2015 Order at 20, it is inadequate at the summary judgment stage. *See Lawther v. OneWest Bank, FSB*, No. C-10-00054 JCS, 2012 WL 298110, at *13 ("Because Plaintiff is unable to show evidence of damages, his negligence per se claims fails as a matter of law and Defendants' motion for summary judgment on that claim is granted."); *see also Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028 (9th Cir. 2001).[12]

Additionally, Plaintiff has produced no evidence suggesting Defendants engaged in any unlawful, unfair, or fraudulent business act or practice. A business act or practice may violate the UCL if it is either unlawful, unfair, or fraudulent. Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank,* 613 F.3d 1195, 1203 (9th Cir. 2010) (internal quotation marks and citations omitted).

With respect to the "unlawful" prong, Plaintiff broadly alleges Defendants acted illegally by making "predatory loans." SAC ¶ 95. However, Plaintiff has not identified what law he is referring to, and thus has failed to present any facts sufficient to establish a violation of some law.

Though Plaintiff does not specifically reference the UCL's "fraudulent" prong, from what the Court can glean, it appears he is attempting to invoke the "fraudulent" prong. Specifically, he alleges Defendants conspired to force the Plaintiff "into foreclosure, whereupon [HSBC] would receive the full value of the Property from the [CDS] insurance, which would be appropriately distributed between the parties. Then, following the foreclosure procedure, the proceeds of the trustee's sale would also accrue to the parties." Opp'n at 23 (SAC ¶ 93). Plaintiff states this "theory is at the heart of this lawsuit." *Id.* While Plaintiff states this theory is at the heart of his case, he cites *no* evidence when discussing this issue in his

---

[12] The Court notes Plaintiff alleges his loan payments increased under the HAMP agreement than called for in his original mortgage note. *See* SAC ¶ 95. However, Plaintiff points to no evidence that he was required to make additional loan payments under the HAMP agreement. Further, it appears Plaintiff does not dispute that if he had made the payments provided for in the HAMP agreement until maturity, he would have saved approximately $211,088.41. *See* SDF No. 21 ("Undisputed as to the actual numbers presented."). However, even assuming Plaintiff has statutory standing because he had to make more loan payments, his UCL claim fails because he produced no evidence suggesting Defendants engaged in any unlawful, unfair, or fraudulent business act or practice as described below.

Opposition. *See id.*[13] Thus, Plaintiff has provided the Court with no facts suggesting Defendants conspired to force Plaintiff into foreclosure. *See id.*

The Court "is not required to review evidence that is not specifically referenced in the plaintiff's opposition to the motion for summary judgment." *Holmes v. Tenderloin Hous. Clinic*, 772 F. Supp. 2d 1074, 1091 (N.D. Cal. 2011) (citation omitted); *see also Keenan v. Allan*, 91 F.3d at 1279 (noting that the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment"). This provides an independent basis for granting summary judgment in Defendants' favor on this issue.

However, even after independently searching the record, Plaintiff's UCL claim fails as a matter of law. In his declaration, Plaintiff broadly states: "an Ocwen rep [] specifically told me that if I successfully completed my TPP, the fact that I was not concurrently making my mortgage payments would not count against me." Croskrey Decl. ¶ 6. Plaintiff also states Ocwen used late fees "as leverage to coerce me into an unacceptable loan modification for a loan that was neither late nor in danger of being late." *Id.* ¶ 2. But Plaintiff provides no details of this alleged conversation, such as when the conversation took place, whether the conversation was by phone or in person, or who he spoke with. Further, Plaintiff offers no supporting evidence. Thus, the Court finds Croskrey's declaration to be a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence," and thus, it is insufficient to create a genuine issue of material fact." *F.T.C. v. Publishing Clearing Housing, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

The Court further finds Plaintiff has not met the fraudulent standard "because he has not even identified the specific deceptive statements or omissions he believes fall under this prong or presented facts showing why those specific statements or omissions would be likely to deceive the public." *Lawther*, 2012 WL 298110, at *26. Thus, "Plaintiff's claim based on fraudulent conduct fails as a matter of law." *Id.*

---

[13] In this section, Plaintiff does argue Defendants "have thus far refused to answer pertinent Special Interrogatories or supply pertinent documents in Discovery, that the Plaintiff believes will enable him to prosecute the within action." Opp'n at 23. As discussed above, however, the Court finds additional discovery is not warranted because Plaintiff failed to comply with Rule 56(d).

Additionally, Croskrey's statements in his declaration are contradicted by his earlier emails and other documentary evidence. While Plaintiff now claims he was tricked into signing the HAMP agreement and defaulting on his loan, *see* Croskrey Decl. ¶ 5, the evidence actually suggests he sought the HAMP modification because of his financial difficulties. As described above, Plaintiff declared under penalty of perjury that he was experiencing financial hardship, Flannigan Decl. Ex. G at 1; he sent an email to Ocwen on December 13, 2010 detailing his financial difficulties, SAC Ex. F at 1; subsequently, on March 29, 2011, Plaintiff wrote an email stating, "provide me with a loan modification that does not lead to foreclosure or meet me in court," SAC Ex. F at 8.

Accordingly, "[b]ecause Plaintiff is unable to produce evidence of a UCL violation, his claim fails as a matter of law as to all Defendants." *Lawther*, 2012 WL 298110, at *27.[14] Therefore, the Court GRANTS summary judgment in Defendant's favor as to the UCL claim.

### F.  Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

Defendants also seek summary judgment on Plaintiff's fourth claim for breach of the implied covenant of good faith and fair dealing. At the motion to dismiss stage, the Court held as follows with respect to this claim:

> Plaintiff has sufficiently, albeit inartfully, alleged a breach of implied
> covenant of good faith and fair dealing claim, as he alleged that Defendants
> acted in bad faith by tricking him into defaulting on his loan, thus
> frustrating his ability to make timely payments as required by the original
> mortgage note and deed of trust.

May 22, 2015 Order at 22.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 371 (1992) (internal quotation marks omitted). A party can breach the implied covenant without violating the express terms of an agreement. *Id.* at 373. However,

---

[14] Plaintiff makes no allegation in his SAC that Defendants violated the UCL's unfair prong. "Because Plaintiff has had number opportunities to properly allege his claims, the Court will hold Plaintiff to the allegations in his [SAC]." *Lawther*, 2012 WL 298110, at *26. In any event, Plaintiff has not offered any evidence showing Defendants' conduct" was unfair. *Id.*

"the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Id.* (internal quotation marks omitted). Thus, the breach alleged must have some connection to the contract's purpose and the contractual parties' expectations and cannot be merely a breach of a free-floating public policy. *See id.*

Here, Plaintiff bases his breach of the implied covenant on two grounds. First, Plaintiff contends there was a breach of the implied covenant of good faith and fair dealing because Defendants had no authority to transfer the beneficiary, trustee, or servicer. Opp'n at 23; *see also* SAC ¶ 99. The Court finds Plaintiff's first argument fails as a matter of law. While Plaintiff contends Defendants had no authority to transfer the beneficiary, trustee, or servicer, the Court concluded above that Plaintiff has not established standing to challenge the validity of the assignments at issue. Thus, Plaintiff cannot assert a claim for breach of the implied covenant of good faith and fair dealing on this ground.

Second, Plaintiff argues Defendants "breached the implied covenant of good faith and fair dealing by, among other things, making unclear, inconspicuous, misleading, and deceptive statements and disclosures to plaintiff; padding the closing costs of the HAMP Agreement loan; and charging excessive, duplicative, and hidden closing costs and fees." SAC ¶ 98. In his declaration accompanying the Opposition, Croskrey states,

> I told the Ocwen rep that I was not having financial difficulties, but that Ocwen had approached me a year earlier, proposing that I do a HAMP refinance, since it would serve my interests without negatively impacting me. Basically, I was told to ignore the wording contained in the HAMP application, and just sign it so that I could go through the TPP and qualify for the HAMP loan.

Croskrey Decl. ¶ 5. The Court finds this single statement to be insufficient to survive summary judgment, especially because Plaintiff provides no specific details of the alleged conversation. *See Publishing Clearing Housing, Inc.*, 104 F.3d at 1171 (("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). Additionally, the Court notes Plaintiff has cited *no* evidence in his Opposition

related to this claim, *see* Opp'n at 24; *see also Keenan v. Allan*, 91 F.3d at 1279 (noting that the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment"). Indeed, Plaintiff concedes he "does not presently have the necessary documents to prove that his theory of the deception is correct" *id.* This complete absence of evidence is fatal at the summary judgment stage. *See Carmen*, 237 F.3d at 1028 (9th Cir. 2001) ("Carmen's memorandum in opposition to the school district's motion for summary judgment did not point to any competent evidence of retaliation whatsoever . . . On this evidence, the district court was correct in determining that there was no genuine issue of material fact.");

The Court again notes Croskrey states he was tricked into signing the HAMP agreement in his declaration. However, the Court rejects these statements as conclusory and self-serving as discussed above. *See Publishing Clearing Housing, Inc.*, 104 F.3d at 1171.[15]

Based on this record, the Court cannot conclude there is a genuine issue for trial. Besides Plaintiff's conclusory statements in his declaration, he has pointed the Court to *no* evidence that Defendants made misleading statements to Plaintiff regarding the HAMP agreement; padded the closing costs of the HAMP agreement; or charged excessive hidden closing costs and fees. *See* Opp'n at 24.[16] Indeed, while Plaintiff now claims Defendants manipulated him into signing the HAMP agreement, the only credible evidence in the record suggests Plaintiff aggressively sought a HAMP modification.

Because Plaintiff has provided the Court with no evidence showing a genuine issue of material fact for trial, the Court GRANTS summary judgment in Defendants' favor on the breach of implied covenant of good faith and fair dealing claim.

---

[15] Further, as mentioned earlier, these current statements are sharply contradicted by his earlier emails and other documentary evidence. The only credible evidence on this issue shows Plaintiff sought a HAMP modification because of his financial difficulties. *See* Flannigan Decl. Ex. G at 1 (in connection with the HAMP agreement, Plaintiff declared under penalty of perjury that he was experiencing financial hardship); SAC Ex. F at 1 (email from Plaintiff to Ocwen detailing financial difficulties); SAC Ex. F at 8 (Plaintiff writing email to Ocwen stating, "provide me with a loan modification that does not lead to a foreclosure or meet me in court").

[16] Indeed, Plaintiff acknowledges that he "does not presently have the necessary to prove that his theory of the deception is correct." Opp'n at 24. Plaintiff argues he does not have any documents "because the Defendants have reneged on their discovery obligations by refusing to supply pertinent answers to Special Interrogatories and produce pertinent documents." *Id.* However, as discussed above, Plaintiff's arguments concerning lack of discovery are unconvincing.

**G. Quiet Title & Declaratory Relief Claims**

Defendants also seeks summary judgment on Plaintiff's quiet title claim and the derivative claim for declaratory relief. Mot. at 23.

It has long been established in California that "a mortgagor cannot quiet his title against a mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649 (1934); *see also Burns v. Hiatt*, 149 Cal. 617, 621 (1906); *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 86 (2013).

Here, Defendants argue Plaintiff's quiet title claim fails because "Plaintiff does not allege that Plaintiff tendered the money to pay the balance owed on the mortgage [], and it is undisputed that Plaintiff has not paid off the Loan." Mot. at 24 (citing SUF 24–26).[17] Plaintiff does not dispute he stopped making payments on the modified loan beginning in December 2012, and that the current loan principal balance is $353,821.85. SUF Nos. 24–25.

Instead Plaintiff, without any citation, argues his obligations under the loan have "been satisfied by the CDS insurance payment." Opp'n at 25. Even if that is the case, "plaintiffs' theory that lenders that received funds through loan securitizations or credit default swaps must waive their borrowers' obligations fails as matter of law. Federal courts have repeatedly rejected precisely this theory." *Rosas v. Carnegie Mortg.,* LLC, No. CV 11-7692 CAS (CWx), 2012 WL 1865480, at *8 (C.D. Cal. May 21, 2012). Because Plaintiff has failed to satisfy this basic requirement of his quiet title claim, the Court finds the claim fails as a matter of law. *See id.* (collecting cases). Additionally, because Plaintiff's claim for declaratory relief is derivative of his quiet title claim, that claim fails as well.[18]

Accordingly, the Court GRANTS summary judgment in favor of Defendants on both Plaintiff's quiet title and declaratory relief claims.

---

[17] The Court notes that because the SAC "does not plausibly indicate an invalid transfer" – as discussed above – Plaintiff is subject to the tender rule. *See Bever*, 2013 WL 5492154, at *4.

[18] In the SAC, Plaintiff "alleges that a declaration of rights and duties of the parties herein by the Court is essential to determine the actual status and validity of the mortgage loan transaction of any rights, duties, and/or obligations as to the enforcement of it." SAC ¶ 116. To the extent Plaintiff is challenging assignments of his loan to which he was not a party, the Court has already determined above that Plaintiff lacks standing to make those claims.

**IV.     Disposition**

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment in full. The Court hereby VACATES the final pretrial conference and trial dates in this matter.

Defendants are directed to file a proposed judgment, consistent with this Order, **on or before June 10, 2016.**


_David O. Carter_
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

DATED:  June 2, 2016